Nana Gyamfi, Esq. (SBN 171480)
Hussain Turk, Esq. (SBN 314704)
7526 Crenshaw Boulevard
Los Angeles, CA 90043
Telephone: (323) 947-9772
Email:  attorneygyamfi@gmail.com
        hussain@htesquire.com

Attorneys for Plaintiffs
LATISHA NIXON as Successor in Interest of
GEMMEL MOORE, Deceased; and LATISHA
NIXON, Individually

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LATISHA NIXON as Successor in Interest of GEMMEL MOORE, Deceased; and LATISHA NIXON, Individually,<br><br>          Plaintiffs.<br><br>    v.<br><br>EDWARD BUCK, individually; the COUNTY OF LOS ANGELES, a municipal entity; JACKIE LACEY, in his official capacity as County of Los Angeles District Attorney; CRAIG HUM, in his official capacity as County of Los Angeles Head Deputy District Attorney; and DOES 1 through 20, inclusive,<br><br>          Defendants. | CASE NO.:  CV 19-04610-CJC-SS<br><br>**FIRST AMENDED COMPLAINT**<br><br>**EDWARD BUCK:**<br>1. WRONGFUL DEATH & SURVIVAL ACTION<br>2. SEXUAL BATTERY<br>3. ASSAULT<br>4. BATTERY<br>5. HATE VIOLENCE<br>6. DRUG DEALER LIABILITY<br>7. NEGLIGENCE *PER SE*<br>8. NEGLIGENCE (PREMISES LIABILITY)<br>9. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS<br>10. HUMAN TRAFFICKING (18 U.S.C. § 1591)<br>11. DISTRIBUTION OF PRIVATE SEXUALLY EXPLICIT MATERIALS (CAL. CIV. CODE § 1708.85)<br><br>**COUNTY OF LOS ANGELES:**<br>12. RACIAL DISCRIMINATION IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE 14TH AMENDMENT AND TITLE 42 U.S.C. § 1981 (42 U.S.C. § 1983) |

1

**JACKIE LACEY & CRAIG HUM:**
13. RACIAL DISCRIMINATION IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE 14TH AMENDMENT AND TITLE 42 U.S.C. § 1981 (42 U.S.C. § 1983)
14. CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS (42 U.S.C. § 1985 (3))
15. VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1986)

**COUNTY OF LOS ANGELES, JACKIE LACEY & CRAIG HUM:**
16. RACIAL DISCRIMINATION IN VIOLATION OF CAL. GOV. CODE §§ 11135 & 11139
17. RACIAL DISCRIMINATION IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE CALIFORNIA CONSTITUTION (ART. 1, § 7 (A))
18. SPOLIATION OF EVIDENCE

LATISHA NIXON, Individually and as Successor in Interest of GEMMEL MOORE, Deceased, complains of EDWARD BUCK, the COUNTY OF LOS ANGELES, JACKIE LACEY, CRAIG HUM, and DOES 1 through 20, inclusive (hereafter collectively "Defendants"), and brings this combined Survival and Wrongful Death Action and Civil Rights Complaint, and as for her claims and causes of action alleges as follows:

## INTRODUCTION

1.      LATISHA NIXON'S son, GEMMEL MOORE, was a young Black man whose life was abruptly and tragically cut short on July 27, 2017 when he died after being forcibly injected with or forced to inject a lethal dose of crystal methamphetamine at the hands of EDWARD BUCK, a wealthy older white man who has a well-documented history of isolating Black men for predatory sexual encounters during which he forcibly injects them or forces them

2

1   to be injected with crystal methamphetamine in the confines of his West Hollywood-apartment

2   –turned-drug-den.

3        2.     Even after a second Black man's dead body was recovered from EDWARD

4   BUCK's apartment on January 7, 2019, the COUNTY OF LOS ANGELES, District Attorney

5   JACKIE LACEY, and Assistant Head Deputy District Attorney CRAIG HUM have refused to

6   file criminal narcotics and/or homicide charges against EDWARD BUCK, because he is a white

7   man who has donated generously and consistently to elected members of LOS ANGELES

8   COUNTY.

9        3.     The COUNTY OF LOS ANGELES'S, JACKIE LACEY'S, and CRAIG HUM'S

10   refusal to file criminal narcotics and/or homicide charges against EDWARD BUCK hinges on a

11   racially-motivated widespread and pervasive pattern of administrative acts and investigatory

12   functions whereby the COUNTY OF LOS ANGELES, JACKIE LACEY, and CRAIG HUM

13   ignore, neglect, forget about, mishandle, mistreat, or otherwise fail to act upon Black victims'

14   and survivors' complaints or reports regarding the felonious criminal acts of white men.

15   <center>**PARTIES**</center>

16        4.     Plaintiff LATISHA NIXON (hereafter "Ms. Nixon" or "Plaintiff") is, and at all

17   times herein mentioned was, a citizen and resident of Harris County in the State of Texas.  Ms.

18   Nixon is the surviving parent of GEMMEL MOORE (hereafter "Mr. Moore" or "Decedent"),

19   now deceased.

20        5.     Ms. Nixon is the Successor in Interest of Mr. Moore, Deceased, and is entitled to

21   bring this Survival Action pursuant to section 377.30 of the California Code of Civil Procedure

22   because there is no personal representative of the Estate of Mr. Moore.  Ms. Nixon has fully

23   complied with section 377.32 of the California Code of Civil Procedure by filing with this

24   Complaint the requisite declaration, executed by Ms. Nixon under penalty of perjury.

25        6.     Ms. Nixon is entitled to bring this Wrongful Death Action pursuant to

26   subdivision (a) of section 377.60 of the California Code of Civil Procedure.

27

28

<center>3</center>

7.      Defendant EDWARD BUCK (hereafter "Mr. Buck" or "Defendant") is and, at all times herein mentioned, was a citizen and resident of the State of California and Los Angeles County.

8.      Defendant COUNTY OF LOS ANGELES (hereafter "County" or "Defendant") is and, at all times herein mentioned, was a municipal entity duly incorporated in the State of California.

9.      Defendant JACKIE LACEY (hereafter "Ms. Lacey" or "Defendant") is and, at all times herein mentioned, was a citizen and resident of the State of California and Los Angeles County, where she has served and continues to serve as the County of Los Angeles's District Attorney since December 3, 2012.

10.     Defendant CRAIG HUM (hereafter "Mr. Hum" or "Defendant") is and, at all times herein mentioned, was a citizen and resident of the State of California and Los Angeles County, where he has served as Deputy District Attorney and currently serves as an Assistant Head Deputy District Attorney of the County of Los Angeles.

11.     The true names and capacities of Defendants named herein as DOES 1 through 20, inclusive, whether individual, corporate, associate, or otherwise are unknown to Ms. Nixon, who therefore sues said Defendants by fictitious names pursuant to section 474 of the California Code of Civil Procedure.  Ms. Nixon respectfully reserves her right to and will amend this Complaint to show such true name and capacities of DOES 1 through 20, inclusive, when they have been determined.

## VENUE

12.     Venue is proper in Los Angeles County because Defendants Mr. Buck, Ms. Lacey, and Mr. Hum reside in Los Angeles County, wherein all events, conduct, and injuries giving rise to this complaint occurred.

## FACTUAL ALLEGATIONS

13.      Mr. Buck is a 65-year old white man who has contributed more than $50,000 to the election campaigns and legal defense funds of numerous County of Los Angeles and City of

FIRST AMENDED COMPLAINT                                     LATISHA NIXON, *ET AL.* V. EDWARD BUCK, *ET AL.*
                                                           CASE NO. CV 19-04610-CJC-SS

Los Angeles government officials and candidates since 2008.[1]  Combining his contributions  to both federal and state-level officials and candidates, Mr. Buck has contributed in excess of $500,000 since 2007.

14.      Throughout much of the early half of 2017, Mr. Moore, who was 26-years old, lived with his mother, Ms. Nixon, and his siblings in Harris County, Texas.  Mr. Moore had a loving relationship with his mother and siblings, and his friends described him as a good man with a kind and generous heart.  Like most young people his age, Mr. Moore had hopes and dreams for his future.  Mr. Moore liked to cook and he wanted to go back to school.

15.      On or around July 27, 2017, Mr. Buck purchased for Mr. Moore an airplane ticket for a flight departing from Houston, Texas and arriving in Los Angeles, California that same evening.  Mr. Moore took the flight for which Mr. Buck purchased him a ticket.  Upon landing at Los Angeles International Airport on July 27, 2017, Mr. Moore went to Mr. Buck's West Hollywood apartment.

---

[1] According to mandatory public disclosures of campaign contribution, Mr. Buck made the following donations and contributions: $100 to Ms. Lacey for District Attorney on March 3, 2012; $1,400 to Eric Garcetti for Mayor on November 3, 2016; $2,600 to Mike Feuer for City Attorney on September 4, 2011, March 23, 2012, and April 2, 2013; $2,000 Mike Feuer's Legal Defense Fund on April 7, 2013 and October 14, 2015; $2,000 to Mike Feuer's Attorney Officeholder Account on May 13, 2015; $1,400 to the Re-Elect Mike Feuer for City Attorney campaign on May 13, 2015; $2,600 to Ron Galperin for City Controller on March 5, 2014 and May 21, 2014; $1,000 to Ron Galperin's Controller Officeholder Account on October 13, 2014; $1,400 to Ron Galperin for City Controller on December 31, 2015; $700 to Bob Blumenfield for City Council on September 25, 2012; $700 to Bob Blumenfield's City Council Officeholder Account on December 7, 2015; $700 to Bob Blumenfield for City Council on December 7, 2015; $500 to Tony Cardenas for City Council on February 8, 2011; $1,400 to Cedillo for City Council on February 27, 2013 and May 20, 2013; $500 to Paul Koretz for City Council on August 20, 2008; $1,000 to Paul Koretz's Officeholder Account on April 29, 2011 and December 17, 2014; $700 to Paul Koretz for City Council on June 30, 2016; $1000 to Krekorian for City Council on November 19, 2009 and December 2, 2009; $500 to Krekorian for City Council on June 24, 2011; $700 to Krekorian for City Council on February 26, 2015; $1,400 to Mitch O'Farrell for City Council on February 17, 2013 and April 2, 2013; $700 to Mitch O'Farrell's Officeholder Account on September 30, 2015; $1,400 to Mitch O'Farrell's Legal Defense Fund on March 23, 2016; $700 to Mitch O'Farrell for City Council on September 30, 2015; $9,500 to Jeffrey Prang for County Accessor on November 1, 2013, June 13, 2014, June 18, 2014, and June 26, 2014; $13,000 to John Duran for County Supervisor on January 6, 2014, February 11, 2014, April 21, 2014, and May 17, 2014; $1,000 to Scott Svonkin for Los Angeles Community College District on February 15, 2015; $500 to Sydney Kamlager for Los Angeles Community College District on February 7, 2015; and $500 to Scott Houston for West Basin Municipal Water District.

5

16.     Within hours after he arrived at Mr. Buck's West Hollywood apartment on July 27, 2017, Mr. Moore was dead.  According to the official autopsy report describing Mr. Buck's apartment where Mr. Moore's lifeless body was recovered by employees of the County of Los Angeles, the apartment was littered with multiple syringes with brown residue, a scale, several lighters and torches, a straw with white residue, glass pipes with white residue and burn marks, plastic bags with white powdery residue and a clear plastic bag containing a crystal-like substance.

17.     Mr. Buck had previously solicited sex from Mr. Moore on numerous occasions. During previous encounters, Mr. Buck would insist upon forcibly injecting Mr. Moore or forcing Mr. Moore to be injected with crystal methamphetamine. Before encountering Mr. Buck, Mr. Moore had _**never**_ used crystal methamphetamine.  Mr. Buck introduced Mr. Moore to crystal methamphetamine, administering to Mr. Moore what he narrated in his journal as his first and "extremely painful" injection.  After injecting Mr. Moore with crystal methamphetamine, Mr. Buck required Mr. Moore to view hardcore gay male pornography, which played loudly on a large flatscreen television set situated in Mr. Buck's living room.  Mr. Buck further required Mr. Moore to masturbate and engage in other autoerotic sex acts for Mr. Buck's sexual gratification and voyeuristic pleasure.  Reflecting on his encounters with Mr. Buck, Mr. Moore wrote in his final journal entry, dated December 3, 2016, "If it didn't hurt so bad, I'd kill myself, but I'll let Ed Buck do it for now."

18.     Upon information and belief, Mr. Buck secretly videorecorded his meth-fueled sexual encounters with Mr. Moore.

19.     Mr. Buck was neither detained, arrested, nor charged in connection with the possession of narcotics, paraphernalia, or Mr. Moore's dead body in Mr. Buck's West Hollywood apartment.

20.     On or around July 31, 2017, the County Department of Coroner preliminarily opined that Mr. Moore's death was caused by an accidental methamphetamine overdose.  In or around November 19, 2017 the County of Los Angeles specifically stated to Ms. Nixon that the final results of the autopsy were still pending and that further clarification was needed regarding

6

1    "the final toxicology results."  It was not until January or February of 2019 that the County of

2    Los Angeles *finally* provided Ms. Nixon with the aforementioned clarification regarding the

3    final toxicology results.

4         21.    On or around August 15, 2017, approximately nineteen days after Mr. Moore's

5    body was discovered in Mr. Buck's profusely drug littered apartment, the County of Los

6    Angeles's Sheriff's Department launched a homicide investigation into Mr. Moore's death as a

7    result of community pressure.

8         22.    On or around September 13, 2017, the County of Los Angeles's Sheriff's

9    Department began conducting interviews with other Black men (hereinafter "Does 21-30"

10   whose testimonies about their own encounters with Mr. Buck corroborated Mr. Moore's own

11   descriptions of past encounters with Mr. Buck.  Each of Does 21-30, many of whom were

12   strangers to one another, independently described their first-hand experiences of being

13   forcefully pressured to ingest and/or being forcibly injected with crystal methamphetamine by

14   Mr. Buck, whom they alleged had a predatory and injurious system of soliciting Black men and

15   watching them cling to life while battling symptoms of methamphetamine toxicity after he

16   intravenously administered large doses of the drug to them.  Each of Does 21-30 further

17   independently described their first-hand experiences of engaging in sexual acts or acts of a

18   generally sexual nature with and in front of Mr. Buck in exchange for compensation in the form

19   of temporary housing, money, alcohol, marijuana, and other substances.

20        23.    On or around July 26, 2018, the County of Los Angeles's District Attorney

21   Jackie Lacey, assisted in her administrative duties and investigatory functions by Assistant

22   Head Deputy District Attorney Craig Hum, declined to file criminal charges against Mr. Buck.

23        24.    On or around January 7, 2019, the lifeless body of a second Black man, Timothy

24   Dean, was recovered from Mr. Buck's West Hollywood apartment – the same apartment in

25   which Mr. Moore died less than 18 months earlier.

26        25.    Mr. Buck was neither detained, arrested, nor charged in connection with the

27   discovery of Mr. Dean's dead body in Mr. Buck's West Hollywood apartment.

28

26.     As recently as April of 2019, Mr. Buck enticed other Does 21-30 to enter his home.  Mr. Buck offered to provide Does 21-30 with temporary housing and compensation in exchange for engaging in or performing sexual acts.  Mr. Buck proceeded to pressure Does 21-30 into ingesting crystal methamphetamine and viewing homemade pornographic videorecorded depicting Mr. Moore masturbating while apparently intoxicated on crystal methamphetamine.

27.     On or around June of 2019, Jackie Lacey claimed that Craig Hum never shared with her the findings or contents of the investigative interviews of Does 21-30 that were conducted by the County of Los Angeles Sheriffs Department.

28.     On or around June of 2019, Jackie Lacey claimed that, because Craig Hum never shared with her the findings, contents, or substance of the investigative interviews of Does 21-30 that were conducted by the County of Los Angeles's Sheriff's Department, Edward Buck has yet to be detained, arrested, or charged with any crime whatsoever due to an alleged lack of probative evidence.

29.     Upon information and belief, the findings or contents of the investigative interviews of Does 21-30 that were conducted by the County of Los Angeles Sheriff's Department but were allegedly never shared with Jackie Lacey by Craig Hum contained several eye-witness accounts constituting probative evidence of the following felonious and misdemeanor criminal acts: (1) that Edward Buck regularly possesses and consumes illicit narcotics, including crystal methamphetamine; (2) that Edward Buck regularly solicits sex from Black men in exchange for temporary housing and/or monetary compensation; (3) that Edward Buck has in his possession and causes to be distributed videorecordings depicting Gemmel Moore masturbating while intoxicated; and (4) that Edward Buck regularly attempts to coerce the Black men he solicits for sex to ingest or be forcibly injected with crystal methamphetamine.

30.     The County of Los Angeles's, Craig Hum's, and Jackie Lacey's administrative failure to share the findings of their investigation of Edward Buck in connection with the deaths of Mr. Moore and Mr. Dean is part of a wider pattern of administrative and investigative

8

First Amended Complaint                              LaTisha Nixon, et al. v. Edward Buck, et al.
                                                     Case No. CV 19-04610-CJC-SS

1    misconduct whereby information concerning or regarding crimes against or affecting Black

2    victims is ignored, neglected, or otherwise treated in a way that falls beneath the standard of

3    care by which similar information concerning or regarding similar crimes against or affecting

4    white victims is treated.

5         31.    The County of Los Angeles's, Craig Hum's, and Jackie Lacey's administrative

6    failure to share the findings of its investigation into Edward Buck is part of a wider pattern of

7    administrative misconduct whereby information concerning or regarding crimes against or

8    affecting gay men or men who have sex with men is ignored, neglected, or otherwise treated in

9    a way that falls beneath the standard of care by which similar information concerning or

10   regarding similar crimes against or affecting heterosexual male victims is treated.

11        **FIRST CAUSE OF ACTION: WRONGFUL DEATH & SURVIVAL DAMAGES**

12             **(Against Defendant EDWARD BUCK and DOES 1 through 20, Inclusive)**

13        32.    Ms. Nixon restates, as though fully set forth herein, the allegations contained in

14   each of the paragraphs above.

15        33.    Prior to Mr. Moore's death, Mr. Moore was living in Harris County, Texas with

16   Ms. Nixon and the rest of his family.  Mr. Moore was a dutiful and loving son to Ms. Nixon and

17   brother to Ms. Nixon's other children, his siblings.

18        34.    As described herein on information and belief, Ms. Nixon alleges that on or

19   about July 27, 2017, Mr. Buck injected Mr. Moore with a lethal dose of crystal

20   methamphetamine.

21        35.    As a direct and proximate result of Mr. Buck's wrongful conduct, Mr. Moore

22   died and his heir, Ms. Nixon, has been deprived of his care, society, comfort, attention, services

23   and support to their general damages in an amount according to proof at trial.  As a direct and

24   proximate result of Mr. Buck's wrongful conduct, Ms. Nixon has incurred funeral and burial

25   expenses and other special damages according to proof at trial.

26        36.    As a direct and proximate result of Mr. Buck's wrongful conduct, Mr. Moore

27   was forced to endure severe mental and physical anguish and fear of impending death and he

28   ultimately suffered severe physical injuries which caused his death.  As a result of the

1   foregoing, Ms. Nixon, as Successor in Interest of Mr. Moore, hereby asserts survivor's claims

2   on behalf of Mr. Moore, Deceased, pursuant to Sections 377.10, 377.20, 377.30, *et seq.*, of the

3   Code of Civil Procedure, and based upon all other applicable statutes and case law and succeed

4   to the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth,

5   Thirteenth, Fourteenth, and Fifteenth Causes of Action, all of which might have been brought

6   by Mr. Moore, Deceased.

### SECOND CAUSE OF ACTION: SEXUAL BATTERY

**(Against Defendant EDWARD BUCK and DOES 1 through 20, Inclusive)**

9   37.   Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, restates and

10  incorporates by reference, as though fully set forth herein, the allegations contained in each of

11  the paragraphs above.

12  38.   Cal. Civ. Code Section 1708.5(a) provides: "A person commits a sexual battery

13  who does any of the following: (1) Acts with the intent to cause a harmful or offensive contact

14  with an intimate part of another, and a sexually offensive contact with that person directly or

15  indirectly results; (2) Acts with the intent to cause a harmful or offensive contact with another

16  by use of his or her intimate part, and a sexually offensive contact with that person directly or

17  indirectly results; (3) Acts to cause an imminent apprehension of the conduct described in

18  paragraph (1) or (2), and a sexually offensive contact with that person directly or indirectly

19  results."

20  39.   Mr. Buck is a "person" under section 1708.5 of the Civil Code.

21  40.   Mr. Buck intended to cause harmful and offensive sexual contact with Mr.

22  Moore and a sexually offensive contact with Mr. Moore resulted, either directly or indirectly,

23  when Mr. Buck distributed or furnished crystal methamphetamine to Mr. Moore and then

24  forcibly and repeatedly injected Mr. Moore with crystal methamphetamine while requiring Mr.

25  Moore to view hardcore pornographic films, masturbate and perform other various sexually

26  graphic acts.

27  41.   At no time did Mr. Moore consent, either expressly or impliedly, to Mr. Buck's

28  acts.

10

42.     Mr. Moore lacked the mental capacity to consent due to his being intoxicated and mentally impaired as a result of being forcibly injected with crystal methamphetamine by Mr. Buck.

43.     Mr. Moore was harmed and offended by Mr. Buck's conduct, as any reasonable person in his situation would have been.

44.     As a direct and proximate result of Mr. Buck's actions, Mr. Moore suffered special and general damages, including physical pain, mental suffering, loss of enjoyment of life, anxiety, embarrassment, humiliation, and severe emotional distress, all in an amount according to proof at trial.  Additionally, Mr. Moore suffered a loss of earnings and other economic opportunities.

45.     Mr. Buck's conduct was malicious and oppressive, and done with a conscious disregard of Mr. Moore's rights.  Mr. Buck also acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Mr. Moore.  Ms. Nixon is further informed and believes that Mr. Buck intended to cause fear, physical injury and/or pain and suffering to Mr. Moore.  Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, is entitled to recover punitive and exemplary damages from Mr. Buck according to proof at trial.

## THIRD CAUSE OF ACTION: ASSAULT

### (Against Defendant EDWARD BUCK and DOES 1 through 20, Inclusive)

46.     Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

47.     Mr. Buck intended to cause Mr. Moore apprehension of an imminent harmful and offensive contact with his person when Mr. Buck distributed or furnished crystal methamphetamine to Mr. Moore and then forcibly and repeatedly injected Mr. Moore with crystal methamphetamine while requiring Mr. Moore to view hardcore pornographic films, masturbate and perform other various sexually graphic acts.

11

1    48.    As a result of Mr. Buck's acts, Mr. Moore was, in fact, placed in great

2    apprehension of imminent harmful and offensive contact with his person.

3    49.    At no time did Mr. Moore consent, either expressly or impliedly, to Mr. Buck's

4    acts.

5    50.    Mr. Moore lacked the mental capacity to consent due to his being intoxicated and

6    mentally impaired as a result of being forcibly injected with crystal methamphetamine by Mr.

7    Buck.

8    51.    In performing the acts described above, Mr. Buck acted with the intent to make

9    contact with Mr. Moore's person.

10   52.    Mr. Buck's conduct as described above, caused Mr. Moore to be apprehensive

11   that Mr. Buck would subject Mr. Moore to further intentional invasions of his right to be free

12   from offensive and harmful contact and demonstrated that at all material times, Mr. Buck had a

13   present ability to subject Mr. Moore to an intentional offensive and harmful touching.

14   53.    As a direct and proximate result of Mr. Buck's actions, Mr. Moore suffered

15   special and general damages, including physical pain, mental suffering, loss of enjoyment of

16   life, anxiety, embarrassment, humiliation, and severe emotional distress, all in an amount

17   according to proof at trial.  Additionally, Mr. Moore suffered a loss of earnings and other

18   economic opportunities.

19   54.    Mr. Buck's conduct was malicious and oppressive, and done with a conscious

20   disregard of Mr. Moore's rights.  Mr. Buck also acted with the knowledge of or with reckless

21   disregard for the fact that his conduct was certain to cause injury and/or humiliation to Mr.

22   Moore.  Ms. Nixon is further informed and believes that Mr. Buck intended to cause fear,

23   physical injury and/or pain and suffering to Mr. Moore.  Ms. Nixon, as Successor in Interest of

24   Mr. Moore, Deceased, is entitled to recover punitive and exemplary damages from Mr. Buck

25   according to proof at trial.

26   ///

27   ///

28   ///

12

1

2

## FOURTH CAUSE OF ACTION: BATTERY

### (Against Defendant EDWARD BUCK and DOES 1 through 20, Inclusive)

3      55.      Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, restates and

4   incorporates by reference, as though fully set forth herein, the allegations contained in each of

5   the paragraphs above.

6      56.      When Mr. Buck forcibly and repeatedly injected Mr. Moore with crystal

7   methamphetamine, Mr. Buck acted with the intent to make a harmful and offensive contact with

8   Mr. Moore's person.

9      57.      When Mr. Buck forcibly and repeatedly injected Mr. Moore with crystal

10  methamphetamine, Mr. Buck did, in fact, bring himself into offensive and unwelcome contact

11  with Mr. Moore's person.

12     58.      Mr. Moore was harmed and offended by Mr. Buck's conduct, as any reasonable

13  person in his situation would have been.

14     59.      At no time did Mr. Moore consent, either expressly or impliedly, to Mr. Buck's

15  acts.

16     60.      Mr. Moore lacked the mental capacity to consent due to his being intoxicated as

17  a result of being forcibly injected with crystal methamphetamine by Mr. Buck.

18     61.      As a direct and proximate result of Mr. Buck's actions, Mr. Moore suffered

19  special and general damages, including physical pain, mental suffering, loss of enjoyment of

20  life, anxiety, embarrassment, humiliation, and severe emotional distress, all in an amount

21  according to proof at trial.  Additionally, Mr. Moore suffered a loss of earnings and other

22  economic opportunities.

23     62.      Mr. Buck's conduct was malicious and oppressive, and done with a conscious

24  disregard of Mr. Moore's rights.  Mr. Buck also acted with the knowledge of or with reckless

25  disregard for the fact that his conduct was certain to cause injury and/or humiliation to Mr.

26  Moore.  Ms. Nixon is further informed and believes that Mr. Buck intended to cause fear,

27  physical injury and/or pain and suffering to Mr. Moore.  Ms. Nixon, as Successor in Interest of

28

13

1   Mr. Moore, Deceased, is entitled to recover punitive and exemplary damages from Mr. Buck

2   according to proof at trial.

3   <div align="center">**FIFTH CAUSE OF ACTION: HATE VIOLENCE**</div>

4   <div align="center">**(Against Defendant EDWARD BUCK and DOES 1 through 20, Inclusive)**</div>

5       63.     Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, restates and

6   incorporates by reference, as though fully set forth herein, the allegations contained in each of

7   the paragraphs above.

8       64.     Cal. Civ. Code Section 51.7 (a) states "all persons within the jurisdiction of this

9   state have the right to be free from any violence, or intimidation by threat of violence,

10  committed against their persons or property because of political affiliation, or on account of any

11  characteristic listed or defined in subdivision (b) or (e) of Section 51 … or because another

12  person perceives them to have one or more of those characteristics."

13      65.     At all times mentioned herein, Mr. Moore had the right to be free from any

14  violence, or intimidation by threat of violence, committed against his person on account of his

15  race.

16      66.     Mr. Buck subjected Mr. Moore to violence, and/or intimidation by threats of

17  violence, against his person on account of his race and/or acted to deny Mr. Moore his right to

18  be free from any violence, or intimidation by threat of violence, committed against his person

19  on the account of his race.

20      67.     In doing so, Mr. Buck violated Mr. Moore's civil rights, as set forth in the Ralph

21  Civil Rights Act, which is codified in Cal. Civ. Code § 51.7.

22      68.     As a direct and proximate result of Mr. Buck's actions, Mr. Moore suffered

23  special and general damages, including physical pain, mental suffering, loss of enjoyment of

24  life, anxiety, embarrassment, humiliation, and severe emotional distress, all in an amount

25  according to proof at trial.  Additionally, Mr. Moore suffered a loss of earnings and other

26  economic opportunities.

27      69.     Mr. Buck's conduct was malicious and oppressive, and done with a conscious

28  disregard of Mr. Moore's rights.  Mr. Buck also acted with the knowledge of or with reckless

<div align="center">14</div>

1  disregard for the fact that his conduct was certain to cause injury and/or humiliation to Mr.

2  Moore.  Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, is further informed and

3  believes that Mr. Buck intended to cause fear, physical injury and/or pain and suffering to Mr.

4  Moore.  Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, is entitled to recover

5  punitive and exemplary damages from Mr. Buck according to proof at trial.

6      70.     In addition to and/or in lieu of Ms. Nixon's, as Successor in Interest of Mr.

7  Moore, Deceased, election, Ms. Nixon is entitled to receive and hereby seeks statutory damages

8  pursuant to Cal. Civ. Code § 52(b), including actual and exemplary damages.

9      71.     Pursuant to Cal. Civ. Code § 52(b)(3), Ms. Nixon, as Successor in Interest of Mr.

10  Moore, Deceased, has incurred, and will continue to incur, attorneys' fees in the prosecution of

11  this action and therefore demands such reasonable attorneys' fees and costs as set by the Court.

12                **SIXTH CAUSE OF ACTION: DRUG DEALER LIABILITY**

13          **(Against Defendant EDWARD BUCK and DOES 1 through 20, Inclusive)**

14      72.     Ms. Nixon, in her individual capacity and as Successor in Interest of Mr. Moore,

15  Deceased, restates and incorporates by reference, as though fully set forth herein, the allegations

16  contained in each of the paragraphs above.

17      73.     The California Drug Dealer Liability Act, codified as Health and Safety Code

18  sections 11700, *et seq.*, was enacted to provide a civil remedy for damages to persons injured as

19  a result of the use of an illegal controlled substance.

20      74.     Health and Safety Code section 11705, subdivision (a)(1), which is part of the

21  Drug Dealer Liability Act, provides that a "parent, legal guardian, child, spouse, or sibling" of

22  the individual controlled substance user is entitled to bring an action for damages caused by an

23  individual's use of an illegal controlled substance.

24      75.     Health and Safety Code section 11705, subdivision (b)(1) states that a person

25  entitled to bring an action under the Drug Dealer Liability Act may seek damages from a person

26  who sold, administered, or furnished an illegal controlled substance to the individual user of the

27  illegal controlled substance, as well as from a person who knowingly participated in the

28  marketing of illegal controlled substances.

1    76.    As described above, Mr. Buck wrongfully and illegally supplied, marketed and

2    distributed crystal methamphetamine to Mr. Moore on or about July 27, 2017.  On or about July

3    27, 2017, Mr. Buck intravenously administered crystal methamphetamine to Mr. Moore, who

4    shortly thereafter died as a result.  On November 17, 2017, the County of Los Angeles indicated

5    to Ms. Nixon that further clarification was needed in regards to the toxicology analysis

6    regarding Mr. Moore's death.  The final conclusion from the toxicology analysis regarding Mr.

7    Moore's death was not provided to Ms. Nixon until January or February of 2019.

8    77.    Mr. Moore's death was tragic and easily avoidable.  It has had a debilitating and

9    devastating effect on his friends and family, not least on Ms. Nixon.

10   78.    Health and Safety Code section 11705, subdivision (d), which is part of the Drug

11   Dealer Liability Act, entitles Plaintiff to recover the following: "(1) Economic damages,

12   including, but not limited to, the cost of treatment and rehabilitation, medical expenses, loss of

13   economic or educational potential, loss of productivity, absenteeism, support expenses,

14   accidents or injury, and any other pecuniary loss proximately caused by the use of an illegal

15   controlled substance.  (2) Noneconomic damages, including, but not limited to, physical and

16   emotional pain, suffering, physical impairment, loss of companionship, services and

17   consortium, and other nonpecuniary losses proximately caused by an individual's use of an

18   illegal controlled substance.  (3) Exemplary damages.  (4) Reasonable attorney fees.  (5) Costs

19   of suit, including, but not limited to, reasonable expenses for expert testimony.  Accordingly, by

20   way of this action, Ms. Nixon, in her individual capacity and as Successor in Interest of Mr.

21   Moore, Deceased, seeks all such available damages in an amount according to proof at trial.

22   79.    Mr. Buck's conduct was malicious and oppressive, and done with a conscious

23   disregard of Mr. Moore's rights.  Mr. Buck also acted with the knowledge of or with reckless

24   disregard for the fact that his conduct was certain to cause injury and/or humiliation to Mr.

25   Moore.  Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, is further informed and

26   believes that Mr. Buck intended to cause fear, physical injury and/or pain and suffering to Mr.

27   Moore.  Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, is entitled to recover

28   punitive and exemplary damages from Mr. Buck according to proof at trial.

16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### SEVENTH CAUSE OF ACTION: NEGLIGENCE *PER SE*

**(Against Defendant EDWARD BUCK and DOES 1 through 20, Inclusive)**

80.     Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

81.     Mr. Buck owed Mr. Moore a duty of care, as set forth herein.

82.     At all relevant times, Mr. Buck was subject to The California Drug Dealer Liability Act, codified as Health and Safety Code sections 11700, *et seq.*, which is a health and safety law pertaining to the significant health hazards posed by the consumption of illegal controlled substances, like crystal methamphetamine.  The Drug Dealer Liability Act was intended to preserve life and prevent bodily injury to individual users of illegal controlled substances, like crystal methamphetamine, by imposing civil liability on a defendant who manufacturers, distributes, or furnishes an illegal controlled substance to an individual who is subsequently injured as a direct and proximate result of consuming the same.  The Drug Dealer Liability Act was further intended to promote the health of those who use illegal controlled substances by providing such individuals with a mechanism for paying the substantial costs of medical rehabilitation by obtaining monetary damages from a defendant who manufactures, distributes, or furnishes an illegal controlled substance.

83.     Mr. Moore is a member of a class (individuals who consume illegal controlled substances) for whose benefit the Drug Dealer Liability Act was passed.

84.     Mr. Buck violated the Drug Dealer Liability Act and breached that duty of care that was owed to Mr. Moore, as described herein, when, after distributing or furnishing crystal methamphetamine to Mr. Moore, Mr. Buck then forcibly and repeatedly injected Mr. Moore with crystal methamphetamine while requiring Mr. Moore to view hardcore pornographic films, masturbate and perform other various sexually graphic acts.

85.     As a direct and proximate result of Mr. Buck's actions, Mr. Moore suffered the same type of harm that the Drug Dealer Liability Act was intended to prevent, resulting in "(1) Economic damages, including, but not limited to, the cost of treatment and rehabilitation,

<div align="center">17</div>

1   medical expenses, loss of economic or educational potential, loss of productivity, absenteeism,

2   support expenses, accidents or injury, and any other pecuniary loss proximately caused by the

3   use of an illegal controlled substance.  (2) Noneconomic damages, including, but not limited to,

4   physical and emotional pain, suffering, physical impairment, loss of companionship, services

5   and consortium, and other nonpecuniary losses proximately caused by an individual's use of an

6   illegal controlled substance" all in an amount according to proof at trial.  *Cal. Health & Safety*

7   *Code* § 11705, subd. (d).

8          86.     Mr. Buck's conduct was malicious and oppressive, and done with a conscious

9   disregard of Mr. Moore's rights.  Mr. Buck also acted with the knowledge of or with reckless

10  disregard for the fact that his conduct was certain to cause injury and/or humiliation to Mr.

11  Moore.  Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, is further informed and

12  believes that Mr. Buck intended to cause fear, physical injury and/or pain and suffering to Mr.

13  Moore.  Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, is entitled to recover

14  punitive and exemplary damages from Mr. Buck according to proof at trial.

15          **EIGHTH CAUSE OF ACTION: NEGLIGENCE (PREMISES LIABILITY)**

16          **(Against Defendant EDWARD BUCK and DOES 1 through 20, Inclusive)**

17         87.     Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, restates and

18  incorporates by reference, as though fully set forth herein, the allegations contained in each of

19  the paragraphs above.

20         88.     In the alternative, Ms. Nixon alleges that Mr. Buck was negligent in the use

21  and/or maintenance of the property on which Mr. Moore was harmed.

22         89.     Mr. Buck occupied or controlled the property on which Mr. Moore was harmed.

23  As the occupier or controller of the property, Mr. Buck was under a duty to manage and act

24  reasonably to control his property and guests to prevent injury from, among other things,

25  foreseeable sexual battery, battery, assault, and injuries resulting from the distribution,

26  manufacturing, or furnishing of illegal controlled substances to Mr. Moore.

27         90.     Based on information and belief, as described herein, Ms. Nixon alleges that Mr.

28  Buck has a history of hosting sexual encounters at the property during which he facilitated the

1   distribution, manufacturing or furnishing of illegal controlled substances to his guests, into

2   whom Mr. Buck forcibly injected crystal methamphetamine.  Mr. Buck was aware or should

3   have been aware of the risk of injury to his guests.

4        91.    By virtue of the information Mr. Buck knew or should have known as alleged

5   herein, Mr. Buck owed Mr. Moore a duty to prevent the kinds of injuries he sustained.

6        92.    Mr. Buck breached that duty of care that was owed to Mr. Moore by his own

7   conduct, as described herein.  Among other things, when Mr. Buck forcibly and repeatedly

8   injected Mr. Moore with crystal methamphetamine while requiring Mr. Moore to view hardcore

9   pornographic films, masturbate and perform other various sexually graphic acts, Mr. Buck

10  breached his duty to ensure the safety of guests on his premises, such as Mr. Moore, who, as a

11  result of Mr. Buck's breach of duty, died shortly after being injected with crystal

12  methamphetamine on the living room floor of Mr. Buck's apartment.

13       93.    As a direct and proximate result of Mr. Buck's actions, Mr. Moore suffered

14  special and general damages, including physical pain, mental suffering, loss of enjoyment of

15  life, anxiety, embarrassment, humiliation, and severe emotional distress, all in an amount

16  according to proof at trial.  Additionally, Mr. Moore suffered a loss of earnings and other

17  economic opportunities.

18       94.    Mr. Buck's conduct was malicious and oppressive, and done with a conscious

19  disregard of Mr. Moore's rights.  Mr. Buck also acted with the knowledge of or with reckless

20  disregard for the fact that his conduct was certain to cause injury and/or humiliation to Mr.

21  Moore.  Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, is further informed and

22  believes that Mr. Buck intended to cause fear, physical injury and/or pain and suffering to Mr.

23  Moore.  Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, is entitled to recover

24  punitive and exemplary damages from Mr. Buck according to proof at trial.

25  ///

26  ///

27  ///

28  ///

19

## NINTH CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(Against Defendant EDWARD BUCK and DOES 1 through 20, Inclusive)**

95.    Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

96.    Mr. Buck knew or should have known that Mr. Moore did not want to be injected with crystal methamphetamine by Mr. Buck.  Mr. Buck further knew or should have known that Mr. Moore did not want to be rendered incapacitated and made to view hardcore pornographic films while masturbating and being forced to perform various other sexually graphic acts.

97.    Mr. Buck's conduct was extreme and outrageous.  Mr. Buck acted with reckless disregard for Mr. Moore's rights and feelings, and with deliberate indifference to the certainty that Mr. Moore would suffer emotional distress.

98.    As a direct and proximate result of Mr. Buck's actions, Mr. Moore suffered and continued to suffer severe mental anguish, humiliation, pain, severe emotional distress and physical distress.  Mr. Moore suffered general and special damages as a direct and proximate result of Mr. Buck's wrongful actions in an amount according to proof at trial.

99.    Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, is informed and believes, and based upon such information and belief alleges, that the outrageous conduct of Mr. Buck described above was performed with conscious disregard for Mr. Moore's rights and feelings.  As a result, Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, is entitled to punitive or exemplary damages from Mr. Buck in an amount according to proof at trial.

## TENTH CAUSE OF ACTION: HUMAN TRAFFICKING (18 U.S.C. § 1591)

**(Against Defendant EDWARD BUCK and DOES 1 through 20, Inclusive)**

100.    Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

20

101.     Federal law provides for a private right of action for human trafficking in violation of 18 U.S.C. § 1591.  *Noble v. Weinstein*, 335 F.Supp.3d 504, 514 (S.D.N.Y. 2018), *quoting* 18 U.S.C. § 1595, subd. (a):

> An individual who is a victim of a violation of Section … 1591 of title 18, United States Code, may bring a civil action in any appropriate district court of the United States.  The court may award actual damages, punitive damages, reasonable attorneys' fees, and other litigation costs reasonably incurred.

102.     The *Noble* court noted that a § 1591 claim "requires Plaintiff to plausibly allege knowledge, or a *modus operandi* … that Defendant enticed Plaintiff with knowledge that means of force or fraud would be used to cause a commercial sex act to take place."  *Noble*, 335 F.Supp.3d at 517-18, *citing U.S. v. Todd*, 627 F.3d 329, 333-34 (9th Cir. 2010).

103.     Mr. Buck knowingly utilized interstate commerce for the purpose of recruiting, enticing, and transporting Mr. Moore, deceased, from Houston, Texas to Los Angeles, California for the purpose of engaging in commercial sex acts.

104.     Upon information and belief, Mr. Buck knowingly made false material statements to Mr. Moore regarding Mr. Buck's intention to host Mr. Moore without causing serious harm or injury to Mr. Moore.  Mr. Buck knowingly made further false material statements to Mr. Moore regarding Mr. Buck's intention to compensate Mr. Moore as payment for engaging in sex acts or acts of a generally sexual nature.

105.     Mr. Buck knew these statements were false at the time and he further knew that Mr. Moore would rely on them.

106.     Mr. Moore relied on Mr. Buck's statements and traveled to Los Angeles, CA from Houston, TX on a commercial flight paid for or arranged by Mr. Buck.

107.     Upon his arrival in Los Angeles, CA, Mr. Buck coerced Mr. Moore to ingest or forcibly injected Mr. Moore with crystal methamphetamine whereby Mr. Moore was incapacitated and was unable to consent Mr. Buck's imposition of hardcore pornographic films while further coercing Mr. Moore to masturbate and perform various other sexually graphic acts or acts of a generally sexual nature, all which Mr. Buck videorecorded.

108.   As a direct and proximate result of Mr. Buck's actions, Mr. Moore suffered and continued to suffer severe mental anguish, humiliation, pain, severe emotional distress and physical distress.  Mr. Moore suffered general and special damages as a direct and proximate result of Mr. Buck's wrongful actions and in an amount according to proof at trial.

109.   Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, is informed and believes, and based upon such information and belief alleges, that the outrageous conduct of Mr. Buck described above was performed with conscious disregard for Mr. Moore's rights and feelings.  As a result, Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, is entitled to punitive or exemplary damages from Mr. Buck in an amount according to proof at trial.

## ELEVENTH CAUSE OF ACTION: DISTRIBUTION OF PRIVATE SEXUALLY EXPLICIT MATERIALS (CAL. CIV. CODE § 1708.85)

### (Against Defendant EDWARD BUCK and DOES 1 through 20, Inclusive)

110.   Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

111.   Mr. Buck violated Mr. Moore's right to privacy by intentionally distributing private sexually explicit materials of Mr. Moore when Mr. Buck showed DOE 21 a private nude videorecording of Mr. Moore on or around April of 2019.

112.   At all times relevant, Mr. Moore did not consent to Mr. Buck's distribution of a private nude videorecording of Mr. Moore.

113.   Mr. Buck knew that Mr. Moore had a reasonable expectation that Mr. Buck would not distribute nude videorecordings of Mr. Moore.

114.   Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, suffered shame, mortification, and hurt feelings upon learning of Mr. Buck's violation of Mr. Moore's right to privacy by intentionally distributing private sexually explicit materials of Mr. Moore when Mr. Buck showed DOE 21 a private nude videorecording of her son on or around April of 2019.

115.   Mr. Buck's conduct was malicious and oppressive, and done with a conscious disregard of Mr. Moore's rights.  Mr. Buck also acted with the knowledge of or with reckless

1  disregard for the fact that his conduct was certain to cause injury and/or humiliation to Mr.

2  Moore.  Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, is further informed and

3  believes that Mr. Buck intended to cause fear, physical injury and/or pain and suffering to Mr.

4  Moore.  Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, is entitled to recover

5  punitive and exemplary damages from Mr. Buck according to proof at trial.

6  **TWELFTH CAUSE OF ACTION: RACIAL DISCRIMINATION IN VIOLATION OF**

7  **THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT AND**

8  **42 U.S.C. § 1981 (42 U.S.C. § 1983)**

9  **(Against Defendant COUNTY OF LOS ANGELES)**

10  116.   Ms. Nixon, Individually and as Successor in Interest of Mr. Moore, Deceased,

11  restates and incorporates by reference, as though fully set forth herein, the allegations contained

12  in each of the paragraphs above.

13  117.   Title 42 U.S.C. § 1983 provides that:

14  Every person, who under color of any statute, ordinance, regulation,
custom or usage of any state or territory or the District of Columbia
15  subjects or causes to be subjected any citizen of the United States or
other person within the jurisdiction thereof to the deprivation of any
16  rights, privileges or immunities secured by the Constitution and law
shall be liable to the party injured in an action at law, suit in equity,
17  or other appropriate proceeding for redress …

18  118.   Title 42 U.S.C. § 1981, subdivision (a), provides, in pertinent part:

19  All persons within the jurisdiction of the United States shall have
the same right in every State and Territory to make and enforce
20  contracts, to sue, be parties, give evidence, and to the full and equal
benefit of all laws and proceedings for the security of persons and
21  property as is enjoyed by white citizens, and shall be subject to like
22  punishment, pains, penalties, taxes, licenses, and exactions of every
kind, and to no other.

23  119.   The Equal Protection Clause of the Fourteenth Amendment to the United States

24  Constitution provides, in pertinent part, "… nor shall any State […] deny to any person within

25  its jurisdiction the equal protection of the laws."

26

27

28

1       120.    Mr. Moore, Deceased, was a Black man and therefore the member of a suspect

2    class.  Mr. Moore, Deceased, was also a gay man and therefore the member of a *quasi* suspect

3    class.

4       121.    The County of Los Angeles is and at all times herein mentioned has been a

5    public entity and an incorporated municipal entity duly authorized and existing as such in and

6    under the laws of the State of California.  The County of Los Angeles, as such, is a person for

7    purposes of 42 U.S.C. § 1983.  *Monell v. Dept. of Soc. Services of the City of New York*, 436

8    U.S. 658 (1978).

9       122.    At all times herein mentioned, the County of Los Angeles's District Attorney's

10    Office's leaders, including District Attorney Jackie Lacey and Assistant Head Deputy District

11    Attorney Craig Hum possessed such power and authority that their acts, edicts, or omissions

12    with respect to the methods, practices, customs and usages related to criminal investigations and

13    prosecutions constituted or represented an official policy or custom of the County of Los

14    Angeles.

15       123.    At all times herein, the County of Los Angeles maintained an official municipal

16    policy or custom of deliberate indifference towards the reports or complaints of criminal acts

17    committed by white perpetrators against Black victims.  This official municipal policy or

18    custom flows from the acts, edicts, or omissions of the leadership of the County of Los

19    Angeles's District Attorney's Office, including District Attorney Jackie Lacey and Assistant

20    Head Deputy District Attorney Craig Hum.

21       124.    As a direct and proximate result of the County of Los Angeles's official

22    municipal policy or custom as described herein, the County of Los Angeles's District

23    Attorney's Office has promulgated, sanctioned, or willfully tolerated a widespread and

24    persistent *sub rosa* practice of deliberate indifference towards the Fourteenth Amendment's

25    Equal Protection rights of Black people by refusing to impartially prosecute white people for

26    their felonious criminal acts against Black victims and survivors.

27       125.    The County of Los Angeles's District Attorney's Office's widespread and

28    persistent pattern of treating with deliberate indifference the Equal Protection rights of Black

1  people by refusing to impartially prosecute white people for their felonious criminal acts against

2  Black victims and survivors, as alleged herein, resulted in and encouraged an atmosphere of

3  lawlessness, abuse and unconstitutional misconduct, which now represents the unconstitutional

4  policy or custom of the County of Los Angeles.

5       126.    The County of Los Angeles's District Attorney's Office's widespread and

6  persistent pattern of refusing to impartially prosecute white people for their felonious criminal

7  acts against Black victims and survivors has had the effect of depriving Mr. Moore, deceased,

8  Mr. Dean, deceased, and Does 21-30, of rights secured by Equal Protection Clause of the

9  Fourteenth Amendment to the United States Constitution.

10       127.    The County of Los Angeles's misconduct as alleged herein was intentional,

11  malicious, willful, wanton, obdurate, and in gross and reckless disregard of the Constitutional

12  rights of Mr. Moore, deceased, Mr. Dean, deceased, and Does 21-30.

13  **THIRTEENTH CAUSE OF ACTION: RACIAL DISCRIMINATION IN VIOLATION**

14  **OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT**

15  **AND 42 U.S.C. § 1981 (42 U.S.C. § 1983)**

16  **(Against Defendants JACKIE LACEY, as County of Los Angeles District Attorney,**

17  **CRAIG HUM, as County of Los Angeles Assistant Head Deputy District Attorney, and**

18  **DOES 1 through 20, Inclusive)**

19       128.    Ms. Nixon, Individually and as Successor in Interest of Mr. Moore, Deceased,

20  restates and incorporates by reference, as though fully set forth herein, the allegations contained

21  in each of the paragraphs above.

22       129.    Ms. Lacey and Mr. Hum, while acting jointly, in conspiracy, and under the color

23  of law in the scope of their employment, willfully carried out their administrative duties and

24  investigatory functions in such a way as to deny Mr. Moore equal protection of the law in

25  violation of his Constitutional rights.

26       130.    Specifically, Ms. Lacey and Mr. Hum actively participated in or carried out

27  administrative duties or investigatory functions that caused reports, complaints, statements, and

28  testimony regarding felonious acts committed by white individuals against Black victims to be

25

1   ignored, mishandled, neglected, forgotten, underinvestigated, or otherwise overlooked in such a

2   manner as to endorse an official widespread administrative or investigatory pattern, policy, or

3   custom that results in a systematically failure to impartially prosecute white people for their

4   felonious criminal acts against Black victims and survivors.

5   131.   Ms. Lacey's and Mr. Hum's administrative or investigatory acts as described

6   herein were motivated by racial *animus* and constituted purposeful discrimination that affected

7   Black individuals in a grossly disproportionate manner vis-à-vis similarly situated white

8   individuals.

9   132.   As a direct and proximate result of this violation, Ms. Nixon, as Successor in

10   Interest of Mr. Moore, Deceased, suffered injuries, including but not limited to severe and

11   extreme emotional distress.

12   133.   Ms. Lacey's and Mr. Hum's administrative or investigative misconduct as

13   alleged herein was intentional, malicious, willful, wanton, obdurate, and in gross and reckless

14   disregard of the Constitutional rights of Mr. Moore, deceased, Mr. Dean, deceased, and Does

15   21-30.

16   134.   Ms. Lacey's and Mr. Hum's administrative or investigative misconduct as

17   alleged herein was undertaken pursuant to and in furtherance of the County of Los Angeles's

18   official policy and custom as alleged above.

19   **FOURTEENTH CAUSE OF ACTION: CONSPIRACY TO DEPRIVE CIVIL RIGHTS**

20   **(42 U.S.C. § 1985(3))**

21   **(Against Defendants JACKIE LACEY, as County of Los Angeles District Attorney,**

22   **CRAIG HUM, as County of Los Angeles Assistant Head Deputy District Attorney, and**

23   **DOES 1 through 20, Inclusive)**

24   135.   Ms. Nixon, Individually and as Successor in Interest of Mr. Moore, Deceased,

25   restates and incorporates by reference, as though fully set forth herein, the allegations contained

26   in each of the paragraphs above.

27   136.   By virtue of the foregoing, Ms. Lacey, Mr. Hum, and Does 1 through 20,

28   Inclusive, conspired for the purpose of carrying out administrative duties or investigatory

26

functions that have the direct and proximate effect of depriving Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, of (a) equal protection of the law; and (b) equal protection and immunities under the law; and for the purpose of preventing and hindering the constituted authorities from giving and securing to Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, equal protection of the law.

137.     Ms. Lacey, Mr. Hum, and Does 1 through 20, did and caused to be done, an administrative or investigatory act or acts in furtherance of the object of the conspiracy, whereby Mr. Moore was deprived of the rights and privileges as set forth above.

138.     Specifically, Mr. Hum, under the supervision of Ms. Lacey, conspired with local law enforcement authorities to ignore, mishandle, neglect, forget about, underinvestigate, or otherwise overlook the reports, complaints, and statements made by Black victims regarding the felonious criminal acts they suffered at the hands of white perpetrators, like Edward Buck.  To be sure, Mr. Hum was provided with several transcripts or notes taken from interviews conducted by local law enforcement agents which contained detailed and graphic accounts of Mr. Buck's felonious misconduct towards Black gay men or Black men who have sex with men.  Upon information and belief, these allegedly reports were never provided to Ms. Lacey.

139.     As a direct proximate result of the foregoing, Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, has been damaged as described herein and demands and is entitled to general and punitive damages and attorney's fees.

**FIFTEENTH CAUSE OF ACTION: CIVIL RIGHTS VIOLATION (42 U.S.C. § 1986)**

**(Against Defendants JACKIE LACEY, as County of Los Angeles District Attorney, CRAIG HUM, as County of Los Angeles Assistant Head Deputy District Attorney, and DOES 1 through 20, Inclusive)**

140.     Ms. Nixon, Individually and as Successor in Interest of Mr. Moore, Deceased, restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

///

///

27

141.   Title 42 U.S.C. § 1986 provides:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured … for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case.

142.   Ms. Lacey and Mr. Hum, acting under color of law and in concert with one another, and by way of a conspiracy among them and local law enforcement authorities, have carried out administrative duties and investigatory functions in such a way as to have caused Plaintiffs to be denied equal protection of the laws and to be deprived of equal privileges and immunities under the laws, on account of Plaintiffs' race, by ignoring, mishandling, neglecting, forgetting about, underinvestigating, or otherwise overlooking the reports, complaints, and statements made by Black victims regarding the felonious criminal acts they suffered at the hands of white perpetrators, resulting in an official widespread pattern, policy, or custom of systematically failing to impartially prosecute white people for their felonious criminal acts against Black victims and survivors.  This policy was in effect at all pertinent times mentioned herein, including before and after Mr. Buck caused the death of Mr. Moore.

143.   Ms. Lacey and Mr. Hum had knowledge of the conspiracy to violate Plaintiffs' civil rights pursuant to the County of Los Angeles's District Attorney's Office's policy of administratively ignoring or mishandling reports of crimes against Black victims and survivors such that the County of Los Angeles routinely declined or failed to impartially prosecute white people for their felonious criminal acts against Black victims and survivors.

144.   Ms. Lacey and Mr. Hum had knowledge of the civil rights violations committed, and had power to prevent these wrongs, but neglected or refused to do so.

145.   As a direct proximate result of the foregoing, Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, has suffered humiliation, emotional distress and otherwise been damaged as described herein and demands and is entitled to general and punitive damages and attorney's fees.

28

1

## SIXTEENTH CAUSE OF ACTION: RACIAL DISCRIMINAITON IN VIOLATION OF

2

## GOVERNMENT CODE §§ 11135, 11139

3

**(Against Defendants COUNTY OF LOS ANGELES, JACKIE LACEY, as County of Los**

4

**Angeles District Attorney, CRAIG HUM, as County of Los Angeles Assistant Head**

5

**Deputy District Attorney, and DOES 1 through 20, Inclusive)**

6       146.   Ms. Nixon, Individually and as Successor in Interest of Mr. Moore, Deceased,

7   restates and incorporates by reference, as though fully set forth herein, the allegations contained

8   in each of the paragraphs above.

9       147.   Government Code § 11135, subdivision (a), provides:

10              No person in the State of California shall, on the basis of … race …
             be unlawfully denied full and equal access to the benefits of, or be

11              unlawfully subjected to discrimination under, any program or
             activity that is conducted, operated, or administered by the state or

12              by any state agency, is funded directly by the state, or receives any
             financial assistance from the state ….

13

14       148.   Eleventh Amendment immunity of the County of Los Angeles, Ms. Lacey, and

15   Mr. Hum was waived by the State of California in its enactment of amendments to Government

16   Code § 11139 in the California Civil Rights Amendments of 1999.

17       149.   As alleged above, the County of Los Angeles, Ms. Lacey, and Mr. Hum

18   discriminated against Black crime victims, including Plaintiffs, pursuant to the County of Los

19   Angeles's District Attorney's Office's policy of declining or failing to impartially prosecute

20   white people for their felonious criminal acts against Black victims and survivors.  This racist

21   policy is carried out by Ms. Lacey's and Mr. Hum's ignoring, mishandling, neglecting,

22   forgetting about, underinvestigating, or otherwise overlooking the reports, complaints, and

23   statements made by Black victims regarding the felonious criminal acts they suffered at the

24   hands of white perpetrators.

25       150.   As a direct proximate result of the foregoing, Ms. Nixon, as Successor in Interest

26   of Mr. Moore, Deceased, has suffered humiliation, emotional distress and otherwise been

27   damaged as described herein and demands and is entitled to general and punitive damages and

28   attorney's fees.

1
2

## SEVENTEENTH CAUSE OF ACTION: RACIAL DISCRIMINATION IN VIOLATION OF ARTICLE 1, § 7 (A) OF THE CALIFORNIA CONSTITUTION

3
4
5

**(Against Defendants COUNTY OF LOS ANGELES, JACKIE LACEY, as County of Los Angeles District Attorney, CRAIG HUM, as County of Los Angeles Assistant Head Deputy District Attorney, and DOES 1 through 20, Inclusive)**

6       151.    Ms. Nixon, Individually and as Successor in Interest of Mr. Moore, Deceased,

7   restates and incorporates by reference, as though fully set forth herein, the allegations contained

8   in each of the paragraphs above.

9       152.    As alleged above, the County of Los Angeles's, Ms. Lacey's, and Mr. Hum's

10  discriminatory policy of declining or failing to impartially prosecute white people for their

11  felonious criminal acts against Black victims and survivors denied Plaintiffs the equal

12  protection of the laws in violation of subdivision (a) of Section 7 of Article 1 of California

13  Constitution.

14

## EIGHTEENTH CAUSE OF ACTION: SPOLIATION OF EVIDENCE

15
16
17

**(Against Defendants COUNTY OF LOS ANGELES, JACKIE LACEY, as County of Los Angeles District Attorney, CRAIG HUM, as County of Los Angeles Assistant Head Deputy District Attorney, and DOES 1 through 20, Inclusive)**

18      153.    Ms. Nixon, Individually and as Successor in Interest of Mr. Moore, Deceased,

19  restates and incorporates by reference, as though fully set forth herein, the allegations contained

20  in each of the paragraphs above.

21      154.    Since Mr. Buck caused Mr. Moore to die on July 27, 2017, the County of Los

22  Angeles, Jackie Lacey, and Craig Hum have been under a legal duty to not suppress or destroy

23  evidence of Mr. Buck's criminal acts that may have caused or contributed to Mr. Moore's death,

24  or otherwise interfere with official proceedings relating to the investigation of the death of Mr.

25  Moore.

26      155.    The County of Los Angeles, Jackie Lacey, and Craig Hum breached their duty,

27  individually or in concert, either intentionally, recklessly or negligently, when they suppressed

28

1   or withheld evidence of Mr. Buck's criminal acts as reported or complained of by witnesses
2   Does 21-30.

3       156.    The County of Los Angeles's, Jackie Lacey's, and Craig Hum's breach has
4   materially impacted the investigation of the death of Mr. Moore and has prevented or disrupted
5   the criminal prosecution of Mr. Buck.  Furthermore, the County of Los Angeles's, Jackie
6   Lacey's, and Craig Hum's breach has materially impacted the chances Plaintiff's investigation
7   of the death of Mr. Moore and has prevented or disrupted the civil prosecution of Mr. Buck for
8   the charges alleged herein.  Finally, the County of Los Angeles's, Jackie Lacey's, and Craig
9   Hum's breach have materially impacted the chances of Plaintiffs identifying and discovering the
10  full extent of Mr. Buck's causation of or contribution to Mr. Moore's death.

11      157.    The County of Los Angeles's, Jackie Lacey's, and Craig Hum's spoliation of
12  evidence has directly and proximately caused Plaintiffs to suffer humiliation, emotional distress
13  and otherwise suffer damages and injuries as described herein, whereby Plaintiffs demand and
14  are entitled to general and punitive damages and attorney's fees.

**PRAYER FOR RELIEF**

16      **WHEREFORE,** Plaintiff pray for judgment and damages against the Defendants as
17  follows:

18      1.   General damages in an amount to be determined at trial;

19      2.   Past and future medical and related expenses in an amount to be determined at trial;

20      3.   Past and future lost earnings in an amount to be determined at trial;

21      4.   Impairment of earning capacity in an amount to be determined at trial;

22      5.   Punitive damages pursuant to applicable law (except as to County);

23      6.   Reasonable attorneys' fees pursuant to applicable law;

24      7.   Prejudgment and post-judgment interest, including but not limited to, California
25           Civil Code § 3288; and

26      8.   Any other and further relief that the Court considers just and proper.

27  ///
28  ///

1

### **JURY DEMAND**

2          Plaintiffs demand a trial by jury of all issues so triable pursuant to Rule 38 of the Federal

3     Rules of Civil Procedure.

4

5     DATED: July 7, 2019

6                                                       _____

7                                                       Hussain Turk, Esq.
                                                        Attorney for Plaintiff LATISHA NIXON

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Nana Gyamfi, Esq. (SBN 171480)
7526 Crenshaw Boulevard
Los Angeles, CA 90043
Telephone: (323) 947-9772
Email: attorneygyamfi@gmail.com

Hussain Turk, Esq. (SBN 314704)
Telephone: (310) 871-2499
Email: hussain@htesquire.com

Attorneys for Plaintiffs
LATISHA NIXON as Successor in Interest of
GEMMEL MOORE, Deceased; and LATISHA
NIXON, Individually

SUPERIOR COURT OF THE STATE OF CALIFORNIA

LOS ANGELES COUNTY, CENTRAL DIVISION

| | |
|---|---|
| LATISHA NIXON as Successor in Interest of GEMMEL MOORE, Deceased; and LATISHA NIXON, Individually,<br><br>               Plaintiff.<br><br>    v.<br><br>EDWARD BUCK, individually; LOS ANGELES COUNTY; JACKIE LACEY, individually and as Los Angeles County District Attorney; CRAIG HUM, individually and as Los Angeles County Deputy District Attorney; and DOES 1 through 20, inclusive,<br><br>               Defendant. | **DECLARATION OF LATISHA NIXON PURSUANT TO SECTION 377.32 OF THE CODE OF CIVIL PROCEDURE** |

I, LATISHA NIXON, declare as follows:

1.     I am over the age of 18 years.  I have personal knowledge of the facts contained in this declaration, and if called as a witness I could and would testify competently to the truth of the facts stated herein.

1

1     2.     I am the mother of GEMMEL ARTAE MOORE, who died on July 27, 2017 at

2  Los Angeles, California.

3     3.     No proceeding is now pending in the State of California for the Estate of

4  GEMMEL ARTAE MOORE.

5     4.     I am the only Successors in Interest to GEMMEL ARTAE MOORE, as defined

6  in Section 377.11 of the Code of Civil Procedure.

7     5.     No other person has a superior right to commence the above-entitled proceeding

8  or to be substituted for GEMMEL ARTAE MOORE in the above-entitled proceeding.

9     6.     A certified copy of the death certificate for GEMMEL ARTAE MOORE is

10  attached hereto as Exhibit "A" and incorporated herein by reference.

11

12     I declare under penalty of perjury under the laws of the State of California that the

13  foregoing is true and correct and that this declaration is executed on  _Feb. 26_ , 2019 at

14  _____Los Angeles_____, California.

15

16

17

18               _____

19               LATISHA NIXON

20

21

22

23

24

25

26

27

28

DECLARATION OF LATISHA NIXON PURSUANT TO CODE OF CIVIL PROCEDURE § 377.32

# EXHIBIT A

# STATE OF CALIFORNIA

# COUNTY OF LOS ANGELES
## DEPARTMENT OF PUBLIC HEALTH

3052017164642 — STATE FILE NUMBER

**CERTIFICATE OF DEATH**
STATE OF CALIFORNIA
USE BLACK INK ONLY / NO ERASURES, WHITEOUTS OR ALTERATIONS
VS-11A(REV 3/08)

3201719036484 — LOCAL REGISTRATION NUMBER

### DECEDENT'S PERSONAL DATA

1. NAME OF DECEDENT—FIRST (Given): **GEMMEL**
2. MIDDLE: **ARTAE**
3. LAST (Family): **MOORE**

AKA, ALSO KNOWN AS – Include full AKA (FIRST, MIDDLE, LAST): - -

4. DATE OF BIRTH mm/dd/ccyy: **01/14/1991**
5. AGE Yrs.: **26** | IF UNDER ONE YEAR Months / Days | IF UNDER 24 HOURS Hours / Mins
6. SEX: **M**

7. BIRTH STATE/FOREIGN COUNTRY: **CA**
10. SOCIAL SECURITY NUMBER: **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**
11. EVER IN U.S. ARMED FORCES?: NO [X]
12. MARITAL STATUS/SRDP (at Time of Death): **NEVER MARRIED**
7. DATE OF DEATH mm/dd/ccyy: **07/27/2017**
8. HOUR (24 Hours): **1922**

13. EDUCATION – Highest Level/Degree: **HS GRADUATE**
14/15. WAS DECEDENT HISPANIC/LATINO/A/SPANISH? YES [ ] NO [X]
16. DECEDENT'S RACE – Up to 3 races may be listed: **BLACK**

17. USUAL OCCUPATION – Type of work for most of life, DO NOT USE RETIRED: **CLERK**
18. KIND OF BUSINESS OR INDUSTRY: **RESTAURANT**
19. YEARS IN OCCUPATION: **1**

### USUAL RESIDENCE

20. DECEDENT'S RESIDENCE (Street and number, or location): **6026 KNOTTY POST LANE**
21. CITY: **SPRING**
22. COUNTY/PROVINCE: **HARRIS**
23. ZIP CODE: **77373**
24. YEARS IN COUNTY: **10**
25. STATE/FOREIGN COUNTRY: **TX**

### INFORMANT

26. INFORMANT'S NAME, RELATIONSHIP: **LATISHA NIXON, MOTHER**
27. INFORMANT'S MAILING ADDRESS: **6026 KNOTTY POST LANE, SPRING TEXAS, TX 77373**

### SPOUSE/SRDP AND PARENT INFORMATION

28. NAME OF SURVIVING SPOUSE/SRDP—FIRST
29. MIDDLE
30. LAST (BIRTH NAME)

31. NAME OF FATHER/PARENT—FIRST: **JERMELL**
32. MIDDLE
33. LAST: **MOORE**
34. BIRTH STATE: **LA**

35. NAME OF MOTHER/PARENT—FIRST: **LATISHA**
36. MIDDLE
37. LAST (BIRTH NAME): **NIXON**
38. BIRTH STATE: **CA**

### FUNERAL DIRECTOR / LOCAL REGISTRAR

39. DISPOSITION DATE mm/dd/ccyy: **08/19/2017**
40. PLACE OF FINAL DISPOSITION: **RESIDENCE OF LATISHA NIXON 6026 KNOTTY POST LANE, SPRING TEXAS, TX 77373**

41. TYPE OF DISPOSITION(S): **CR/TR/RES**
42. SIGNATURE OF EMBALMER: ▶ **CHRISTOPHER BROWN**
43. LICENSE NUMBER: **EMB8182**

44. NAME OF FUNERAL ESTABLISHMENT: **SERENITY FAMILY MORTUARY**
45. LICENSE NUMBER: **FD2311**
46. SIGNATURE OF LOCAL REGISTRAR: ▶ **JEFFREY GUNZENHAUSER, MD**
47. DATE mm/dd/ccyy: **08/16/2017**

### PLACE OF DEATH

101. PLACE OF DEATH: **RESIDENCE**
102. IF HOSPITAL, SPECIFY ONE: IP / ER/OP / DOA / Hospice
103. IF OTHER THAN HOSPITAL, SPECIFY ONE: Nursing Home/LTC / Decedent's Home / Other [X]

104. COUNTY: **LOS ANGELES**
105. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number, or location): **1234 NORTH LAUREL AVENUE APT. #17**
106. CITY: **WEST HOLLYWOOD**

### CAUSE OF DEATH

107. CAUSE OF DEATH — Enter the chain of events — diseases, injuries, or complications — that directly caused death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE.

IMMEDIATE CAUSE (Final disease or condition resulting in death): (A) **METHAMPHETAMINE USE**

Sequentially list conditions, if any, leading to cause on Line A. Enter UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST
(B)
(C)
(D)

108. DEATH REPORTED TO CORONER?: YES [X]
109. BIOPSY PERFORMED?: YES [X]
110. AUTOPSY PERFORMED?: YES [X]
111. USED IN DETERMINING CAUSE?: YES [X]

Time Interval Between Onset and Death: **MINS**
Case number: **2017-05583**

112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107: **NONE**

113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? (If yes, list type of operation and date): **NO**

113A. IF FEMALE, PREGNANT IN LAST YEAR?: YES / NO / UNK

### PHYSICIAN'S CERTIFICATION

114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED.
Decedent Attended Since: (A)
Decedent Last Seen Alive: (B)

115. SIGNATURE AND TITLE OF CERTIFIER
116. LICENSE NUMBER
117. DATE mm/dd/ccyy

118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE

### CORONER'S USE ONLY

119. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED.
MANNER OF DEATH: Natural [ ] Accident [X] Homicide [ ] Suicide [ ] Pending Investigation [ ] Could not be determined [ ]

120. INJURED AT WORK?: YES [ ] NO [X] UNK [ ]
121. INJURY DATE mm/dd/ccyy: **07/27/2017**
122. HOUR (24 Hours): **1700**

123. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.): **RESIDENCE**

124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury): **DRUG INTAKE**

125. LOCATION OF INJURY (Street and number, or location, and city, and zip): **1234 NORTH LAUREL AVENUE APT. #17, WEST HOLLYWOOD, CA 90046**

126. SIGNATURE OF CORONER / DEPUTY CORONER: **EVONNE D REED**
127. DATE mm/dd/ccyy: **08/16/2017**
128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER: **EVONNE D REED, DEPUTY CORONER**

STATE REGISTRAR: A / B / C / D / E

*010001003636671*

FAX AUTH. / CENSUS TRACT

CALOSANGO1

---

## CERTIFIED COPY OF VITAL RECORD
### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

This is a true certified copy of the record filed in the County of Los Angeles Department of Public Health if it bears the Registrar's signature in purple ink.

001620921

This copy is not valid unless prepared on an engraved border, displaying the date, seal and signature of the Registrar.

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE



Health Officer and Registrar
VD

DATE ISSUED: **MAR 20 2018**

