1   Nana Gyamfi, Esq. (SBN 171480)
2   7526 Crenshaw Boulevard
    Los Angeles, CA 90043
3   Telephone: (323) 947-9772
    Email: attorneygyamfi@gmail.com
4
5   Hussain Turk, Esq. (SBN 314704)
    939 S. Broadway Ave. Apt. 702
6   Los Angeles, CA 90015
    Telephone: (310) 871-2499
7   Email: Hussain@HTEsquire.com

8   Attorneys for Plaintiffs
    LATISHA NIXON as Successor in Interest of
9   GEMMEL MOORE, Deceased; and LATISHA
10  NIXON, Individually

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13  LATISHA NIXON as Successor in Interest
14  of GEMMEL MOORE, Deceased; and         CASE NO.:  CV 19-04610-CJC(SHSx)
    LATISHA NIXON, Individually,
15                                         **SECOND AMENDED COMPLAINT**
                        Plaintiffs.
16                                         **EDWARD BUCK:**
17          v.                             1.  WRONGFUL DEATH & SURVIVAL
                                               ACTION
18  EDWARD BUCK, individually; the         2.  SEXUAL BATTERY
    COUNTY OF LOS ANGELES, a municipal     3.  ASSAULT
19  entity; JACKIE LACEY, in his official  4.  BATTERY
20  capacity as County of Los Angeles District  5.  HATE VIOLENCE
    Attorney; CRAIG HUM, in his official   6.  NEGLIGENCE (PREMISES LIABILITY)
21  capacity as County of Los Angeles Head  7.  INTENTIONAL INFLICTION OF
    Deputy District Attorney; and DOES 1      EMOTIONAL DISTRESS
22  through 20, inclusive,                 8.  HUMAN TRAFFICKING (18 U.S.C. §
23                                             1591)
                        Defendants.        9.  DISTRIBUTION OF PRIVATE
24                                             SEXUALLY EXPLICIT MATERIALS
25                                             (CAL. CIV. CODE § 1708.85)
                                           ///
26                                         ///
                                           ///
27                                         ///
                                           ///
28

                              1

**COUNTY OF LOS ANGELES:**
10. RACIAL DISCRIMINATION IN
    VIOLATION OF THE EQUAL
    PROTECTION CLAUSE OF THE 14TH
    AMENDMENT AND TITLE 42 U.S.C. §
    1981 (42 U.S.C. § 1983)

**JACKIE LACEY & CRAIG HUM:**
11. RACIAL DISCRIMINATION IN
    VIOLATION OF THE EQUAL
    PROTECTION CLAUSE OF THE 14TH
    AMENDMENT AND TITLE 42 U.S.C. §
    1981 (42 U.S.C. § 1983)
12. CONSPIRACY TO DEPRIVE
    CONSTITUTIONAL RIGHTS (42 U.S.C. §
    1985 (3))
13. VIOLATION OF CIVIL RIGHTS (42
    U.S.C. § 1986)

LATISHA NIXON, Individually and as Successor in Interest of GEMMEL MOORE, Deceased, complains of EDWARD BUCK, the COUNTY OF LOS ANGELES, JACKIE LACEY, CRAIG HUM, and DOES 1 through 20, inclusive (hereafter collectively "Defendants"), and brings this combined Survival and Wrongful Death Action and Civil Rights Complaint, and as for her claims and causes of action alleges as follows:

## INTRODUCTION

1.        LATISHA NIXON'S son, GEMMEL MOORE, was a young Black man whose life was abruptly and tragically cut short on July 27, 2017 when he died after being forcibly injected with or forced to inject a lethal dose of crystal methamphetamine at the hands of EDWARD BUCK, a wealthy older white man who has a well-documented history of isolating Black men for predatory sexual encounters during which he forcibly injects them or forces them to be injected with crystal methamphetamine in the confines of his West Hollywood-apartment –turned-drug-den.

2

2.      Even after a second Black man's dead body was recovered from EDWARD BUCK's apartment on January 7, 2019, and after LATISHA NIXON presented the COUNTY OF LOS ANGELES with several eye witness statements by Black gay men who had been similarly forcibly injected with nearly fatal doses of narcotics by EDWARD BUCK, District Attorney JACKIE LACEY, and Assistant Head Deputy District Attorney CRAIG HUM indicated on several occasions that they had ignored Black gay men's criminal complaints about EDWARD BUCK, who has donated generously and consistently to elected members of the COUNTY OF LOS ANGELES, including District Attorney JACKIE LACEY.

3.      The COUNTY OF LOS ANGELES's ignorance of the several criminal reports made by Black gay men against EDWARD BUCK hinges on a racially-motivated widespread and pervasive pattern of administrative acts and investigatory functions whereby the COUNTY OF LOS ANGELES, JACKIE LACEY, and CRAIG HUM reject the criminal complaints of Black and/or gay men presented to them by LATISHA NIXON, a Black woman.  Ultimately, this pervasive pattern of rejecting the criminal reports of Black gay men manifested in the COUNTY OF LOS ANGELES's filing of criminal charges that failed to reflect any of the complaints made by any of the Black gay men whose criminal reports were presented to the COUNTY OF LOS ANGELES by LATISHA NIXON.

## PARTIES

4.      Plaintiff LATISHA NIXON (hereafter "Ms. Nixon" or "Plaintiff") is, and at all times herein mentioned was, a citizen and resident of Harris County in the State of Texas.  Ms. Nixon is the surviving parent of GEMMEL MOORE (hereafter "Mr. Moore" or "Decedent"), now deceased.

5.      Ms. Nixon is the Successor in Interest of Mr. Moore, Deceased, and is entitled to bring this Survival Action pursuant to section 377.30 of the California Code of Civil Procedure because there is no personal representative of the Estate of Mr. Moore.  Ms. Nixon has fully complied with section 377.32 of the California Code of Civil Procedure by filing with this Complaint the requisite declaration, executed by Ms. Nixon under penalty of perjury.

1       6.     Ms. Nixon is entitled to bring this Wrongful Death Action pursuant to

2  subdivision (a) of section 377.60 of the California Code of Civil Procedure.

3       7.     Defendant EDWARD BUCK (hereafter "Mr. Buck" or "Defendant") is and, at

4  all times herein mentioned, was a citizen and resident of the State of California and Los Angeles

5  County.

6       8.     Defendant COUNTY OF LOS ANGELES (hereafter "County" or "Defendant")

7  is and, at all times herein mentioned, was a municipal entity duly incorporated in the State of

8  California.

9       9.     Defendant JACKIE LACEY (hereafter "Ms. Lacey" or "Defendant") is and, at

10  all times herein mentioned, was a citizen and resident of the State of California and Los Angeles

11  County, where she has served and continues to serve as the County of Los Angeles's District

12  Attorney since December 3, 2012.

13       10.    Defendant CRAIG HUM (hereafter "Mr. Hum" or "Defendant") is and, at all

14  times herein mentioned, was a citizen and resident of the State of California and Los Angeles

15  County, where he has served as Deputy District Attorney and currently serves as an Assistant

16  Head Deputy District Attorney of the County of Los Angeles.

17       11.    The true names and capacities of Defendants named herein as DOES 1 through

18  20, inclusive, whether individual, corporate, associate, or otherwise are unknown to Ms. Nixon,

19  who therefore sues said Defendants by fictitious names pursuant to section 474 of the California

20  Code of Civil Procedure.  Ms. Nixon respectfully reserves her right to and will amend this

21  Complaint to show such true name and capacities of DOES 1 through 20, inclusive, when they

22  have been determined.

23  **<u>VENUE</u>**

24       12.    Venue is proper in Los Angeles County because Defendants Mr. Buck, Ms.

25  Lacey, and Mr. Hum reside in Los Angeles County, wherein all events, conduct, and injuries

26  giving rise to this complaint occurred.

27

28

## **FACTUAL ALLEGATIONS**

13.     Mr. Buck is a 65-year old white man who has contributed more than $50,000 to the election campaigns and legal defense funds of numerous County of Los Angeles and City of Los Angeles government officials and candidates since 2008.[1]  Combining his contributions to both federal and state-level officials and candidates, Mr. Buck has contributed in excess of $500,000 since 2007.

14.     Throughout much of the early half of 2017, Mr. Moore, who was 26-years old, lived with his mother, Ms. Nixon, and his siblings in Harris County, Texas.  Mr. Moore had a loving relationship with his mother and siblings, and his friends described him as a good man with a kind and generous heart.  Like most young people his age, Mr. Moore had hopes and dreams for his future.  Mr. Moore liked to cook and he wanted to go back to school.

15.     On or around July 27, 2017, Mr. Buck purchased for Mr. Moore an airplane ticket for a flight departing from Houston, Texas and arriving in Los Angeles, California that same evening.  Mr. Moore took the flight for which Mr. Buck purchased him a ticket.  Upon

---

[1] According to mandatory public disclosures of campaign contribution, Mr. Buck made the following donations and contributions: $100 to Ms. Lacey for District Attorney on March 3, 2012; $1,400 to Eric Garcetti for Mayor on November 3, 2016; $2,600 to Mike Feuer for City Attorney on September 4, 2011, March 23, 2012, and April 2, 2013; $2,000 Mike Feuer's Legal Defense Fund on April 7, 2013 and October 14, 2015; $2,000 to Mike Feuer's Attorney Officeholder Account on May 13, 2015; $1,400 to the Re-Elect Mike Feuer for City Attorney campaign on May 13, 2015; $2,600 to Ron Galperin for City Controller on March 5, 2014 and May 21, 2014; $1,000 to Ron Galperin's Controller Officeholder Account on October 13, 2014; $1,400 to Ron Galperin for City Controller on December 31, 2015; $700 to Bob Blumenfield for City Council on September 25, 2012; $700 to Bob Blumenfield's City Council Officeholder Account on December 7, 2015; $700 to Bob Blumenfield for City Council on December 7, 2015; $500 to Tony Cardenas for City Council on February 8, 2011; $1,400 to Cedillo for City Council on February 27, 2013 and May 20, 2013; $500 to Paul Koretz for City Council on August 20, 2008; $1,000 to Paul Koretz's Officeholder Account on April 29, 2011 and December 17, 2014; $700 to Paul Koretz for City Council on June 30, 2016; $1000 to Krekorian for City Council on November 19, 2009 and December 2, 2009; $500 to Krekorian for City Council on June 24, 2011; $700 to Krekorian for City Council on February 26, 2015; $1,400 to Mitch O'Farrell for City Council on February 17, 2013 and April 2, 2013; $700 to Mitch O'Farrell's Officeholder Account on September 30, 2015; $1,400 to Mitch O'Farrell's Legal Defense Fund on March 23, 2016; $700 to Mitch O'Farrell for City Council on September 30, 2015; $9,500 to Jeffrey Prang for County Accessor on November 1, 2013, June 13, 2014, June 18, 2014, and June 26, 2014; $13,000 to John Duran for County Supervisor on January 6, 2014, February 11, 2014, April 21, 2014, and May 17, 2014; $1,000 to Scott Svonkin for Los Angeles Community College District on February 15, 2015; $500 to Sydney Kamlager for Los Angeles Community College District on February 7, 2015; and $500 to Scott Houston for West Basin Municipal Water District.

1    landing at Los Angeles International Airport on July 27, 2017, Mr. Moore went to Mr. Buck's

2    West Hollywood apartment.

3        16.    Within hours after he arrived at Mr. Buck's West Hollywood apartment on July

4    27, 2017, Mr. Moore was dead.  According to the official autopsy report describing Mr. Buck's

5    apartment where Mr. Moore's lifeless body was recovered by employees of the County of Los

6    Angeles, the apartment was littered with multiple syringes with brown residue, a scale, several

7    lighters and torches, a straw with white residue, glass pipes with white residue and burn marks,

8    plastic bags with white powdery residue and a clear plastic bag containing a crystal-like

9    substance.

10       17.    Mr. Buck had previously solicited sex from Mr. Moore on numerous occasions.

11   During previous encounters, Mr. Buck would insist upon forcibly injecting Mr. Moore or

12   forcing Mr. Moore to be injected with crystal methamphetamine. Before encountering Mr.

13   Buck, Mr. Moore had ***never*** used crystal methamphetamine.  Mr. Buck introduced Mr. Moore

14   to crystal methamphetamine, administering to Mr. Moore what he narrated in his journal as his

15   first and "extremely painful" injection.  After injecting Mr. Moore with crystal

16   methamphetamine, Mr. Buck required Mr. Moore to view hardcore gay male pornography,

17   which played loudly on a large flatscreen television set situated in Mr. Buck's living room.  Mr.

18   Buck further required Mr. Moore to masturbate and engage in other autoerotic sex acts for Mr.

19   Buck's sexual gratification and voyeuristic pleasure.  Reflecting on his encounters with Mr.

20   Buck, Mr. Moore wrote in his final journal entry, dated December 3, 2016, "If it didn't hurt so

21   bad, I'd kill myself, but I'll let Ed Buck do it for now."

22       18.    Upon information and belief, Mr. Buck secretly videorecorded his meth-fueled

23   sexual encounters with Mr. Moore.

24       19.    Mr. Buck was neither detained, arrested, nor charged in connection with the

25   possession of narcotics, paraphernalia, or Mr. Moore's dead body in Mr. Buck's West

26   Hollywood apartment.

27       20.    On or around July 31, 2017, the County Department of Coroner preliminarily

28   opined that Mr. Moore's death was caused by an accidental methamphetamine overdose.  In or

FIRST AMENDED COMPLAINT                    LATISHA NIXON, *ET AL.* V. EDWARD BUCK, *ET AL.*
                                           CASE NO. CV 19-04610-CJC-SS

1    around November 19, 2017 the County of Los Angeles specifically stated to Ms. Nixon that the

2    final results of the autopsy were still pending and that further clarification was needed regarding

3    "the final toxicology results."  It was not until January or February of 2019 that the County of

4    Los Angeles *finally* provided Ms. Nixon with the aforementioned clarification regarding the

5    final toxicology results.

6         21.    On or around August 15, 2017, approximately nineteen days after Mr. Moore's

7    body was discovered in Mr. Buck's profusely drug littered apartment, the County of Los

8    Angeles's Sheriff's Department launched a homicide investigation into Mr. Moore's death as a

9    result of community pressure.

10        22.    On or around September 13, 2017, the County of Los Angeles's Sheriff's

11   Department began conducting interviews with other Black men (hereinafter "Does 21-30)

12   whose testimonies about their own encounters with Mr. Buck corroborated Mr. Moore's own

13   descriptions of past encounters with Mr. Buck.  Each of Does 21-30, many of whom were

14   strangers to one another, independently described their first-hand experiences of being

15   forcefully pressured to ingest and/or being forcibly injected with crystal methamphetamine by

16   Mr. Buck, whom they alleged had a predatory and injurious system of soliciting Black men and

17   watching them cling to life while battling symptoms of methamphetamine toxicity after he

18   intravenously administered large doses of the drug to them.  Each of Does 21-30 further

19   independently described their first-hand experiences of engaging in sexual acts or acts of a

20   generally sexual nature with and in front of Mr. Buck in exchange for compensation in the form

21   of temporary housing, money, alcohol, marijuana, and other substances.

22        23.    On or around July 26, 2018, the County of Los Angeles's District Attorney

23   Jackie Lacey, assisted in her administrative duties and investigatory functions by Assistant

24   Head Deputy District Attorney Craig Hum, declined to file criminal charges against Mr. Buck.

25        24.    On or around January 7, 2019, the lifeless body of a second Black man, Timothy

26   Dean, was recovered from Mr. Buck's West Hollywood apartment – the same apartment in

27   which Mr. Moore died less than 18 months earlier.

28

7

25.     Mr. Buck was neither detained, arrested, nor charged in connection with the discovery of Mr. Dean's dead body in Mr. Buck's West Hollywood apartment.

26.     On approximately March 21, 2019, Ms. Nixon presented the County with one of Does 21-30, a Black gay man who described four incidents involving Mr. Buck.  During each of these incidents, Mr. Buck laced this one of Does 21-30 with a drug that caused him to lose consciousness.  During one of these incidents, this one of Does 21-30 awoke to Mr. Buck injecting him with crystal methamphetamine against his will.  During another one of these incidents, this one of Does 21-30 recalled how Mr. Buck referred to him as a "nigger."

27.     On approximately May 8, 2019, Ms. Nixon presented the County with one of Does 21-30, a gay man who described an incidents involving Mr. Buck that took place in late April of 2019.  This one of Does 21-30 described how Mr. Buck enticed him to enter his home.  Mr. Buck offered to provide this one of Does 21-30 with temporary housing and compensation in exchange for engaging in or performing sexual acts.  Mr. Buck proceeded to aggressively pressure this one of Does 21-30 into ingesting crystal methamphetamine and viewing homemade pornographic videorecorded depicting Mr. Moore masturbating while apparently intoxicated on crystal methamphetamine.

28.     On or around June 13, 2019, District Attorney Jackie Lacey admitted point blank that she was unaware of the witness statements of Does 21-30 that were presented to the County by Ms. Nixon after the death of Mr. Moore.  Jackie Lacey further claimed that, because Craig Hum never shared with her the criminal complaints made by Does 21-30, there was an alleged lack of probative evidence.

29.     On or around July of 2019, County Sheriff Alex Villanueva admitted point blank that he was unaware of the witness statements of Does 21-30 that were presented to the County by Ms. Nixon after the death of Mr. Moore.

30.     On or around August 20, 2019, and after Ms. Nixon attempted to ensure that Jackie Lacey's office was aware of the existence of the witness statements of Does 21-30, Cynthia Barnes of the County of Los Angeles's District Attorney's Office indicated that she had

1  neither requested nor reviewed the investigative file containing the witness statements of Does
2  21-30.

3      31.    Taken together, the criminal complaints made by Does 21-30, who were
4  identified by and presented to the County of Los Angeles by LaTisah Nixon, contained several
5  eye-witness accounts constituting probative evidence of the following felonious and
6  misdemeanor criminal acts: (1) that Edward Buck regularly possesses and consumes illicit
7  narcotics, including crystal methamphetamine; (2) that Edward Buck regularly solicits sex from
8  Black men in exchange for temporary housing and/or monetary compensation; (3) that Edward
9  Buck has in his possession and causes to be distributed videorecordings depicting Gemmel
10 Moore masturbating while intoxicated; and (4) that Edward Buck regularly attempts to coerce
11 the Black men he solicits for sex to ingest or be forcibly injected with crystal
12 methamphetamine.

13     32.    Finally, on approximately September 18, 2019 the United States of America filed
14 criminal charges against Mr. Buck for committing various criminal acts against Does 21-30,
15 described in the United States of America's affidavit as Victims 2-9.  Meanwhile, on
16 approximately September 17, 2019, The People of the State of California filed criminal charges
17 against Mr. Buck but not for any of the criminal acts describe by Does 21-30 in the criminal
18 reports that the County would never have obtained had it not been for LaTisha Nixon's diligent
19 efforts at identifying witnesses and providing their information to the County of Los Angeles.

20       **FIRST CAUSE OF ACTION: WRONGFUL DEATH & SURVIVAL DAMAGES**

21       **(Against Defendant EDWARD BUCK and DOES 1 through 20, Inclusive)**

22     33.    Ms. Nixon restates, as though fully set forth herein, the allegations contained in
23 each of the paragraphs above.

24     34.    Ms. Nixon has standing to bring this action because at the time of his passing,
25 Mr. Moore was unmarried and had no surviving issue.

26     35.    Prior to Mr. Moore's death, Mr. Moore was living in Harris County, Texas with
27 Ms. Nixon and the rest of his family.  Mr. Moore was a dutiful and loving son to Ms. Nixon and
28 brother to Ms. Nixon's other children, his siblings.

9

1    36.    As described herein and upon information and belief, Ms. Nixon alleges that on

2    or about July 27, 2017, Mr. Buck injected Mr. Moore with a lethal dose of crystal

3    methamphetamine.

4    37.    As a direct and proximate result of Mr. Buck's wrongful conduct, Mr. Moore

5    died and his heir, Ms. Nixon, has been deprived of his care, society, comfort, attention, services

6    and support to their general damages in an amount according to proof at trial.  As a direct and

7    proximate result of Mr. Buck's wrongful conduct, Ms. Nixon has incurred funeral and burial

8    expenses and other special damages according to proof at trial.

9    38.    As a direct and proximate result of Mr. Buck's wrongful conduct, Mr. Moore

10    was forced to endure severe mental and physical anguish and fear of impending death and he

11    ultimately suffered severe physical injuries which caused his death.  As a result of the

12    foregoing, Ms. Nixon, as Successor in Interest of Mr. Moore, hereby asserts survivor's claims

13    on behalf of Mr. Moore, Deceased, pursuant to Sections 377.10, 377.20, 377.30, *et seq.*, of the

14    Code of Civil Procedure, and based upon all other applicable statutes and case law and succeed

15    to the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth,

16    Thirteenth, Fourteenth, and Fifteenth Causes of Action, all of which might have been brought

17    by Mr. Moore, Deceased.

18    **SECOND CAUSE OF ACTION: SEXUAL BATTERY**

19    **(Against Defendant EDWARD BUCK and DOES 1 through 20, Inclusive)**

20    39.    Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, restates and

21    incorporates by reference, as though fully set forth herein, the allegations contained in each of

22    the paragraphs above.

23    40.    Cal. Civ. Code Section 1708.5(a) provides: "A person commits a sexual battery

24    who does any of the following: (1) Acts with the intent to cause a harmful or offensive contact

25    with an intimate part of another, and a sexually offensive contact with that person directly or

26    indirectly results; (2) Acts with the intent to cause a harmful or offensive contact with another

27    by use of his or her intimate part, and a sexually offensive contact with that person directly or

28    indirectly results; (3) Acts to cause an imminent apprehension of the conduct described in

10

1  paragraph (1) or (2), and a sexually offensive contact with that person directly or indirectly

2  results."

3      41.    Mr. Buck is a "person" under section 1708.5 of the Civil Code.

4      42.    Mr. Buck intended to cause harmful and offensive sexual contact with Mr.

5  Moore and a sexually offensive contact with Mr. Moore resulted, either directly or indirectly,

6  when Mr. Buck distributed or furnished crystal methamphetamine to Mr. Moore and then

7  forcibly and repeatedly injected Mr. Moore with crystal methamphetamine while requiring Mr.

8  Moore to view hardcore pornographic films, masturbate and perform other various sexually

9  graphic acts.

10      43.    At no time did Mr. Moore consent, either expressly or impliedly, to Mr. Buck's

11  acts.

12      44.    Mr. Moore lacked the mental capacity to consent due to his being intoxicated and

13  mentally impaired as a result of being forcibly injected with crystal methamphetamine by Mr.

14  Buck.

15      45.    Mr. Moore was harmed and offended by Mr. Buck's conduct, as any reasonable

16  person in his situation would have been.

17      46.    As a direct and proximate result of Mr. Buck's actions, Mr. Moore suffered

18  special and general damages, including physical pain, mental suffering, loss of enjoyment of

19  life, anxiety, embarrassment, humiliation, and severe emotional distress, all in an amount

20  according to proof at trial.  Additionally, Mr. Moore suffered a loss of earnings and other

21  economic opportunities.

22      47.    Mr. Buck's conduct was malicious and oppressive, and done with a conscious

23  disregard of Mr. Moore's rights.  Mr. Buck also acted with the knowledge of or with reckless

24  disregard for the fact that his conduct was certain to cause injury and/or humiliation to Mr.

25  Moore.  Ms. Nixon is further informed and believes that Mr. Buck intended to cause fear,

26  physical injury and/or pain and suffering to Mr. Moore.  Ms. Nixon, as Successor in Interest of

27  Mr. Moore, Deceased, is entitled to recover punitive and exemplary damages from Mr. Buck

28  according to proof at trial.

11

## THIRD CAUSE OF ACTION: ASSAULT

### (Against Defendant EDWARD BUCK and DOES 1 through 20, Inclusive)

48.     Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

49.     Mr. Buck intended to cause Mr. Moore apprehension of an imminent harmful and offensive contact with his person when Mr. Buck distributed or furnished crystal methamphetamine to Mr. Moore and then forcibly and repeatedly injected Mr. Moore with crystal methamphetamine while requiring Mr. Moore to view hardcore pornographic films, masturbate and perform other various sexually graphic acts.

50.     As a result of Mr. Buck's acts, Mr. Moore was, in fact, placed in great apprehension of imminent harmful and offensive contact with his person.

51.     At no time did Mr. Moore consent, either expressly or impliedly, to Mr. Buck's acts.

52.     Mr. Moore lacked the mental capacity to consent due to his being intoxicated and mentally impaired as a result of being forcibly injected with crystal methamphetamine by Mr. Buck.

53.     In performing the acts described above, Mr. Buck acted with the intent to make contact with Mr. Moore's person.

54.     Mr. Buck's conduct as described above, caused Mr. Moore to be apprehensive that Mr. Buck would subject Mr. Moore to further intentional invasions of his right to be free from offensive and harmful contact and demonstrated that at all material times, Mr. Buck had a present ability to subject Mr. Moore to an intentional offensive and harmful touching.

55.     As a direct and proximate result of Mr. Buck's actions, Mr. Moore suffered special and general damages, including physical pain, mental suffering, loss of enjoyment of life, anxiety, embarrassment, humiliation, and severe emotional distress, all in an amount according to proof at trial.  Additionally, Mr. Moore suffered a loss of earnings and other economic opportunities.

56.     Mr. Buck's conduct was malicious and oppressive, and done with a conscious disregard of Mr. Moore's rights.  Mr. Buck also acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Mr. Moore.  Ms. Nixon is further informed and believes that Mr. Buck intended to cause fear, physical injury and/or pain and suffering to Mr. Moore.  Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, is entitled to recover punitive and exemplary damages from Mr. Buck according to proof at trial.

## FOURTH CAUSE OF ACTION: BATTERY

### (Against Defendant EDWARD BUCK and DOES 1 through 20, Inclusive)

57.     Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

58.     When Mr. Buck forcibly and repeatedly injected Mr. Moore with crystal methamphetamine, Mr. Buck acted with the intent to make a harmful and offensive contact with Mr. Moore's person.

59.     When Mr. Buck forcibly and repeatedly injected Mr. Moore with crystal methamphetamine, Mr. Buck did, in fact, bring himself into offensive and unwelcome contact with Mr. Moore's person.

60.     Mr. Moore was harmed and offended by Mr. Buck's conduct, as any reasonable person in his situation would have been.

61.     At no time did Mr. Moore consent, either expressly or impliedly, to Mr. Buck's acts.

62.     Mr. Moore lacked the mental capacity to consent due to his being intoxicated as a result of being forcibly injected with crystal methamphetamine by Mr. Buck.

63.     As a direct and proximate result of Mr. Buck's actions, Mr. Moore suffered special and general damages, including physical pain, mental suffering, loss of enjoyment of life, anxiety, embarrassment, humiliation, and severe emotional distress, all in an amount

First Amended Complaint

LaTisha Nixon, et al. v. Edward Buck, et al.
Case No. CV 19-04610-CJC-SS

1  according to proof at trial.  Additionally, Mr. Moore suffered a loss of earnings and other

2  economic opportunities.

3       64.    Mr. Buck's conduct was malicious and oppressive, and done with a conscious

4  disregard of Mr. Moore's rights.  Mr. Buck also acted with the knowledge of or with reckless

5  disregard for the fact that his conduct was certain to cause injury and/or humiliation to Mr.

6  Moore.  Ms. Nixon is further informed and believes that Mr. Buck intended to cause fear,

7  physical injury and/or pain and suffering to Mr. Moore.  Ms. Nixon, as Successor in Interest of

8  Mr. Moore, Deceased, is entitled to recover punitive and exemplary damages from Mr. Buck

9  according to proof at trial.

10                **FIFTH CAUSE OF ACTION: HATE VIOLENCE**

11         **(Against Defendant EDWARD BUCK and DOES 1 through 20, Inclusive)**

12       65.    Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, restates and

13  incorporates by reference, as though fully set forth herein, the allegations contained in each of

14  the paragraphs above.

15       66.    Cal. Civ. Code Section 51.7 (a) states "all persons within the jurisdiction of this

16  state have the right to be free from any violence, or intimidation by threat of violence,

17  committed against their persons or property because of political affiliation, or on account of any

18  characteristic listed or defined in subdivision (b) or (e) of Section 51 … or because another

19  person perceives them to have one or more of those characteristics."

20       67.    Upon information and belief, Mr. Buck had a strong sexual preference for Black

21  gay men.  Mr. Buck consistently sought out Black gay men, just like Mr. Moore, to inject them

22  with lethal doses of crystal methamphetamine.  During these predatory encounters, Mr. Buck

23  regularly referred to his victims as niggers.  Mr. Buck sought out Mr. Moore because he is

24  Black.

25       68.    At all times mentioned herein, Mr. Moore had the right to be free from any

26  violence, or intimidation by threat of violence, committed against his person on account of his

27  race.

28

69.     Mr. Buck subjected Mr. Moore to violence, and/or intimidation by threats of violence, against his person on account of his race and/or acted to deny Mr. Moore his right to be free from any violence, or intimidation by threat of violence, committed against his person on the account of his race.

70.     In doing so, Mr. Buck violated Mr. Moore's civil rights, as set forth in the Ralph Civil Rights Act, which is codified in Cal. Civ. Code § 51.7.

71.     As a direct and proximate result of Mr. Buck's actions, Mr. Moore suffered special and general damages, including physical pain, mental suffering, loss of enjoyment of life, anxiety, embarrassment, humiliation, and severe emotional distress, all in an amount according to proof at trial.  Additionally, Mr. Moore suffered a loss of earnings and other economic opportunities.

72.     Mr. Buck's conduct was malicious and oppressive, and done with a conscious disregard of Mr. Moore's rights.  Mr. Buck also acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Mr. Moore.  Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, is further informed and believes that Mr. Buck intended to cause fear, physical injury and/or pain and suffering to Mr. Moore.  Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, is entitled to recover punitive and exemplary damages from Mr. Buck according to proof at trial.

73.     In addition to and/or in lieu of Ms. Nixon's, as Successor in Interest of Mr. Moore, Deceased, election, Ms. Nixon is entitled to receive and hereby seeks statutory damages pursuant to Cal. Civ. Code § 52(b), including actual and exemplary damages.

74.     Pursuant to Cal. Civ. Code § 52(b)(3), Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, has incurred, and will continue to incur, attorneys' fees in the prosecution of this action and therefore demands such reasonable attorneys' fees and costs as set by the Court.

///
///
///
///

15

**SIXTH CAUSE OF ACTION: NEGLIGENCE (PREMISES LIABILITY)**

**(Against Defendant EDWARD BUCK and DOES 1 through 20, Inclusive)**

75.     Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

76.     In the alternative, Ms. Nixon alleges that Mr. Buck was negligent in the use and/or maintenance of the property on which Mr. Moore was harmed.

77.     Mr. Buck occupied or controlled the property on which Mr. Moore was harmed. As the occupier or controller of the property, Mr. Buck was under a duty to manage and act reasonably to control his property and guests to prevent injury from, among other things, foreseeable sexual battery, battery, assault, and injuries resulting from the distribution, manufacturing, or furnishing of illegal controlled substances to Mr. Moore.

78.     Based on information and belief, as described herein, Ms. Nixon alleges that Mr. Buck has a history of hosting sexual encounters at the property during which he facilitated the distribution, manufacturing or furnishing of illegal controlled substances to his guests, into whom Mr. Buck forcibly injected crystal methamphetamine.  Mr. Buck was aware or should have been aware of the risk of injury to his guests.

79.     By virtue of the information Mr. Buck knew or should have known as alleged herein, Mr. Buck owed Mr. Moore a duty to prevent the kinds of injuries he sustained.

80.     Mr. Buck breached that duty of care that was owed to Mr. Moore by his own conduct, as described herein.  Among other things, when Mr. Buck forcibly and repeatedly injected Mr. Moore with crystal methamphetamine while requiring Mr. Moore to view hardcore pornographic films, masturbate and perform other various sexually graphic acts, Mr. Buck breached his duty to ensure the safety of guests on his premises, such as Mr. Moore, who, as a result of Mr. Buck's breach of duty, died shortly after being injected with crystal methamphetamine on the living room floor of Mr. Buck's apartment.

81.     As a direct and proximate result of Mr. Buck's actions, Mr. Moore suffered special and general damages, including physical pain, mental suffering, loss of enjoyment of

1  life, anxiety, embarrassment, humiliation, and severe emotional distress, all in an amount

2  according to proof at trial.  Additionally, Mr. Moore suffered a loss of earnings and other

3  economic opportunities.

4       82.    Mr. Buck's conduct was malicious and oppressive, and done with a conscious

5  disregard of Mr. Moore's rights.  Mr. Buck also acted with the knowledge of or with reckless

6  disregard for the fact that his conduct was certain to cause injury and/or humiliation to Mr.

7  Moore.  Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, is further informed and

8  believes that Mr. Buck intended to cause fear, physical injury and/or pain and suffering to Mr.

9  Moore.  Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, is entitled to recover

10  punitive and exemplary damages from Mr. Buck according to proof at trial.

11  **SEVENTH CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL**

12  **DISTRESS**

13  **(Against Defendant EDWARD BUCK and DOES 1 through 20, Inclusive)**

14       83.    Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, restates and

15  incorporates by reference, as though fully set forth herein, the allegations contained in each of

16  the paragraphs above.

17       84.    Mr. Buck knew or should have known that Mr. Moore did not want to be

18  injected with crystal methamphetamine by Mr. Buck.  Mr. Buck further knew or should have

19  known that Mr. Moore did not want to be rendered incapacitated and made to view hardcore

20  pornographic films while masturbating and being forced to perform various other sexually

21  graphic acts.

22       85.    Mr. Buck's conduct was extreme and outrageous.  Mr. Buck acted with reckless

23  disregard for Mr. Moore's rights and feelings, and with deliberate indifference to the certainty

24  that Mr. Moore would suffer emotional distress.

25       86.    As a direct and proximate result of Mr. Buck's actions, Mr. Moore suffered

26  continued to suffer severe mental anguish, humiliation, pain, severe emotional distress and

27  physical distress.  Mr. Moore suffered general and special damages as a direct and proximate

28  result of Mr. Buck's wrongful actions in an amount according to proof at trial.

87.     Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, is informed and believes, and based upon such information and belief alleges, that the outrageous conduct of Mr. Buck described above was performed with conscious disregard for Mr. Moore's rights and feelings.  As a result, Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, is entitled to punitive or exemplary damages from Mr. Buck in an amount according to proof at trial.

### EIGHTH CAUSE OF ACTION: HUMAN TRAFFICKING (18 U.S.C. § 1591)

### (Against Defendant EDWARD BUCK and DOES 1 through 20, Inclusive)

88.     Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

89.     Federal law provides for a private right of action for human trafficking in violation of 18 U.S.C. § 1591.  *Noble v. Weinstein*, 335 F.Supp.3d 504, 514 (S.D.N.Y. 2018), *quoting* 18 U.S.C. § 1595, subd. (a):

> An individual who is a victim of a violation of Section … 1591 of title 18, United States Code, may bring a civil action in any appropriate district court of the United States.  The court may award actual damages, punitive damages, reasonable attorneys' fees, and other litigation costs reasonably incurred.

90.     The *Noble* court noted that a § 1591 claim "requires Plaintiff to plausibly allege knowledge, or a *modus operandi* … that Defendant enticed Plaintiff with knowledge that means of force or fraud would be used to cause a commercial sex act to take place."  *Noble*, 335 F.Supp.3d at 517-18, *citing U.S. v. Todd*, 627 F.3d 329, 333-34 (9th Cir. 2010).

91.     Mr. Buck knowingly utilized interstate commerce for the purpose of recruiting, enticing, and transporting Mr. Moore, deceased, from Houston, Texas to Los Angeles, California for the purpose of engaging in commercial sex acts.

92.     Upon information and belief, Mr. Buck knowingly made false material statements to Mr. Moore regarding Mr. Buck's intention to host Mr. Moore without causing serious harm or injury to Mr. Moore.  Mr. Buck knowingly made further false material statements to Mr. Moore regarding Mr. Buck's intention to compensate Mr. Moore as payment for engaging in sex acts or acts of a generally sexual nature.

18

93.     Mr. Buck knew these statements were false at the time and he further knew that Mr. Moore would rely on them.

94.     Mr. Moore relied on Mr. Buck's statements and traveled to Los Angeles, CA from Houston, TX on a commercial flight paid for or arranged by Mr. Buck.

95.     Upon his arrival in Los Angeles, CA, Mr. Buck coerced Mr. Moore to ingest or forcibly injected Mr. Moore with crystal methamphetamine whereby Mr. Moore was incapacitated and was unable to consent Mr. Buck's imposition of hardcore pornographic films while further coercing Mr. Moore to masturbate and perform various other sexually graphic acts or acts of a generally sexual nature, all which Mr. Buck videorecorded.

96.     As a direct and proximate result of Mr. Buck's actions, Mr. Moore suffered and continued to suffer severe mental anguish, humiliation, pain, severe emotional distress and physical distress.  Mr. Moore suffered general and special damages as a direct and proximate result of Mr. Buck's wrongful actions and in an amount according to proof at trial.

97.     Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, is informed and believes, and based upon such information and belief alleges, that the outrageous conduct of Mr. Buck described above was performed with conscious disregard for Mr. Moore's rights and feelings.  As a result, Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, is entitled to punitive or exemplary damages from Mr. Buck in an amount according to proof at trial.

## NINTH CAUSE OF ACTION: DISTRIBUTION OF PRIVATE SEXUALLY EXPLICIT MATERIALS (CAL. CIV. CODE § 1708.85)

### (Against Defendant EDWARD BUCK and DOES 1 through 20, Inclusive)

98.     Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

99.     Mr. Buck violated Mr. Moore's right to privacy by intentionally distributing private sexually explicit materials of Mr. Moore when Mr. Buck showed DOE 21 a private nude videorecording of Mr. Moore on or around April of 2019.

19

First Amended Complaint                    LaTisha Nixon, et al. v. Edward Buck, et al.
                                           Case No. CV 19-04610-CJC-SS

100.     At all times relevant, Mr. Moore did not consent to Mr. Buck's distribution of a private nude videorecording of Mr. Moore.

101.     Mr. Buck knew that Mr. Moore had a reasonable expectation that Mr. Buck would not distribute nude videorecordings of Mr. Moore.

102.     Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, suffered shame, mortification, and hurt feelings upon learning of Mr. Buck's violation of Mr. Moore's right to privacy by intentionally distributing private sexually explicit materials of Mr. Moore when Mr. Buck showed DOE 21 a private nude videorecording of her son on or around April of 2019.

103.     Mr. Buck's conduct was malicious and oppressive, and done with a conscious disregard of Mr. Moore's rights.  Mr. Buck also acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Mr. Moore.  Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, is further informed and believes that Mr. Buck intended to cause fear, physical injury and/or pain and suffering to Mr. Moore.  Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, is entitled to recover punitive and exemplary damages from Mr. Buck according to proof at trial.

**TENTH CAUSE OF ACTION: RACIAL DISCRIMINATION IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT AND 42 U.S.C. § 1981 (42 U.S.C. § 1983)**

**(Against Defendant COUNTY OF LOS ANGELES)**

104.     Ms. Nixon, Individually, restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

105.     Title 42 U.S.C. § 1983 provides that:
> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress …

106.     Title 42 U.S.C. § 1981, subdivision (a), provides, in pertinent part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

107.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides, in pertinent part, "… nor shall any State […] deny to any person within its jurisdiction the equal protection of the laws."

108.    Ms. Nixon is an African American woman and is therefore the member of a suspect class.  Ms. Nixon's son, Mr. Moore was an African American man and therefore the member of a suspect class.  In her attempts to get the County to properly investigate Mr. Moore's death, Ms. Nixon presented the County with several witnesses, Does 21-30, each of whom were also African American or gay or both, and therefore members of a suspect and *quasi* suspect class.

109.    The County of Los Angeles is and at all times herein mentioned has been a public entity and an incorporated municipal entity duly authorized and existing as such in and under the laws of the State of California.  The County of Los Angeles, as such, is a person for purposes of 42 U.S.C. § 1983.  *Monell v. Dept. of Soc. Services of the City of New York*, 436 U.S. 658 (1978).

110.    At all times herein mentioned, the County of Los Angeles's District Attorney's Office's leaders, including District Attorney Jackie Lacey and Assistant Head Deputy District Attorney Craig Hum possessed such power and authority that their acts, edicts, or omissions with respect to the methods, practices, customs and usages related to investigating reports of criminal activities constituted or represented the following official policies of the County of Los Angeles:

- **POLICY 1**: rejecting the reports of criminal activities when such reports were presented by African American women.  This official municipal policy or custom flows from the acts, edicts, or omissions of the leadership of the County

21

of Los Angeles's District Attorney's Office, including District Attorney Jackie Lacey and Assistant Head Deputy District Attorney Craig Hum.

- **POLICY 2**: rejecting the reports of criminal activities when such reports were made by African American men.  This official municipal policy or custom flows from the acts, edicts, or omissions of the leadership of the County of Los Angeles's District Attorney's Office, including District Attorney Jackie Lacey and Assistant Head Deputy District Attorney Craig Hum.

- **POLICY 3**: rejecting the reports of criminal activities when such reports were made by gay men.  This official municipal policy or custom flows from the acts, edicts, or omissions of the leadership of the County of Los Angeles's District Attorney's Office, including District Attorney Jackie Lacey and Assistant Head Deputy District Attorney Craig Hum.

111.    As a direct and proximate result of the County of Los Angeles's official municipal policy or custom as described herein, the County of Los Angeles's District Attorney's Office has promulgated, sanctioned, or willfully tolerated a widespread and persistent *sub rosa* practice of rejecting the reports of criminal activities when such reports were made by African American and/or gay men and presented by African American women. Evidence of the widespread and persistent practice promulgated by the aforementioned Policies described in Paragraph 110 include numerous instances in which senior employees of the County, including District Attorney Jackie Lacey, admitted to having no knowledge whatsoever about the criminal reports made by Does 21-30 that were presented to the County by Ms. Nixon after the death of Mr. Moore.  First, on or around June 13, 2019, District Attorney Jackie Lacey admitted point blank that she was unaware of the witness statements of Does 21-30 that were proferred to the County by Ms. Nixon after the death of Mr. Moore.  Second, on or around July of 2019, County Sheriff Alex Villanueva admitted point blank that he was unaware of the witness statements of Does 21-30 that were presented[2] to the County by Ms. Nixon after the

---

[2]  The overwhelming majority, if not all, of the Black gay men who provided criminal reports to the County first contacted Ms. Nixon and were then presented to the County by Ms. Nixon.Ms. Nixon worked tirelessly around the clock, aided by community leader and investigative journalist Jasmyne Cannick

death of Mr. Moore.  Third, on or around August 20, 2019, and after Ms. Nixon attempted to ensure that Jackie Lacey's office was aware of the existence of the witness statements of Does 21-30, Cynthia Barnes of the County of Los Angeles's District Attorney's Office indicated that she had neither requested nor reviewed the investigative file containing the witness statements of Does 21-30.  Finally, on approximately September 18, 2019 the United States of America filed criminal charges against Mr. Buck for committing various criminal acts against Does 21-30, described in the United States of America's affidavit as Victims 2-9.  Meanwhile, on approximately September 17, 2019, The People of the State of California filed criminal charges against Mr. Buck but not for any of the criminal acts reported by Does 21-30.

112.    The County of Los Angeles's District Attorney's Office's widespread and persistent pattern of treating with deliberate indifference the Equal Protection rights of African Americans and gay people by rejecting the reports they make and/or provide, as alleged herein, resulted in and encouraged an atmosphere of lawlessness, abuse and unconstitutional misconduct, which now represents the unconstitutional policy or custom of the County of Los Angeles.

113.    The County of Los Angeles's District Attorney's Office's widespread and persistent pattern, as described herein, violated the rights of Ms. Nixon, individually, and as Successor in Interest of Mr. Moore, as secured by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, which subjects race discrimination to strict scrutiny and sexual orientation discrimination to quasi strict scrutiny.  As a direct and proximate result of the County's violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, Ms. Nixon suffered the severe emotional distress, mental anguish, psychological torture, and humiliation of having to literally beg the County to investigate Mr. Moore's death.  Ms. Nixon further suffered the emotional pain of the prolonged mourning of her son's death after repeatedly being confronted with the reality that the County

---

(also a Black woman) and her cousels Hussain Turk (a gay man of color) and Nana Gyamfi (also a Black woman), to identify Black gay male witnesses from across the country, meet with them, obtain their statements, offer their contact information and summaries of their testimony to the County, and escort them to meet with the County for interviews.

1    did not care about the lives of her son or other Black gay men whose reports of violent criminal

2    activity the County ignored for more than two (2) years.

3          114.    The County of Los Angeles's misconduct as alleged herein was intentional,

4    malicious, willful, wanton, obdurate, and in gross and reckless disregard of the Constitutional

5    rights of Ms. Nixon, Mr. Moore, and Does 21-30 (aka Victims 2-9 in the United States of

6    America's September 18, 2019 affidavit but not mentioned at all in the People's of the State of

7    California September 17, 2019 criminal charging document).

8    **ELEVENTH CAUSE OF ACTION: RACIAL DISCRIMINATION IN VIOLATION OF**

9    **THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT AND**

10   **42 U.S.C. § 1981 (42 U.S.C. § 1983)**

11   **(Against Defendants JACKIE LACEY, as County of Los Angeles District Attorney,**

12   **CRAIG HUM, as County of Los Angeles Assistant Head Deputy District Attorney, and**

13   **DOES 1 through 20, Inclusive)**

14         115.    Ms. Nixon, Individually and as Successor in Interest of Mr. Moore, Deceased,

15   restates and incorporates by reference, as though fully set forth herein, the allegations contained

16   in each of the paragraphs above.

17         116.    Ms. Lacey and Mr. Hum, while acting jointly, in conspiracy, and under the color

18   of law in the scope of their employment, willfully carried out their administrative duties and

19   investigatory functions in such a way as to deny Ms. Nixon and Mr. Moore equal protection of

20   the law in violation of their Constitutional rights.

21         117.    Specifically, Ms. Lacey and Mr. Hum actively participated in or carried out a

22   policy of rejecting or ignoring criminal reports made by Black gay men and presented to them

23   by Black women.  Ms. Lacey's and Mr. Hum's active participation in this policy resulted in

24   their failure to investigate these criminal reports, which contained several eye-witness accounts

25   constituting probative evidence of the following felonious and misdemeanor criminal acts: (1)

26   that Edward Buck regularly possesses and consumes illicit narcotics, including crystal

27   methamphetamine; (2) that Edward Buck regularly solicits sex from Black men in exchange for

28   temporary housing and/or monetary compensation; (3) that Edward Buck has in his possession

1    and causes to be distributed videorecordings depicting Gemmel Moore masturbating while

2    intoxicated; and (4) that Edward Buck regularly attempts to coerce the Black men he solicits for

3    sex to ingest or be forcibly injected with crystal methamphetamine.

4       118.    Ms. Lacey's and Mr. Hum's administrative or investigatory acts as described

5    herein were motivated by racial *animus* and constituted purposeful discrimination that affected

6    Black women, Black gay men, and gay men in a grossly disproportionate manner vis-à-vis

7    similarly situated white women, and white straight men.

8       119.    As a direct and proximate result of this violation, Ms. Nixon, Individually and as

9    Successor in Interest of Mr. Moore, Deceased, suffered injuries, including but not limited to

10    severe and extreme emotional distress, mental anguish, psychological torture, and the

11    humiliation of having to literally beg the County to investigate Mr. Moore's death.  Ms. Nixon

12    further suffered the emotional pain of the prolonged mourning of her son's death after

13    repeatedly being confronted with the reality that the County did not care about the lives of her

14    son or other Black gay men whose reports of violent criminal activity the County ignored for

15    more than two (2) years.

16       120.    Ms. Lacey's and Mr. Hum's administrative or investigative misconduct as

17    alleged herein was intentional, malicious, willful, wanton, obdurate, and in gross and reckless

18    disregard of the Constitutional rights of Ms. Nixon, Mr. Moore, deceased, Mr. Dean, deceased,

19    and Does 21-30.

20       121.    Ms. Lacey's and Mr. Hum's administrative or investigative misconduct as

21    alleged herein was undertaken pursuant to and in furtherance of the County of Los Angeles's

22    official policy and custom as alleged above.

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

**TWELFTH CAUSE OF ACTION: CONSPIRACY TO DEPRIVE CIVIL RIGHTS (42 U.S.C. § 1985(3))**

**(Against Defendants JACKIE LACEY, as County of Los Angeles District Attorney, CRAIG HUM, as County of Los Angeles Assistant Head Deputy District Attorney, and DOES 1 through 20, Inclusive)**

122.    Ms. Nixon, Individually and as Successor in Interest of Mr. Moore, Deceased, restates and incorporates by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

123.    By virtue of the foregoing, Ms. Lacey, Mr. Hum, and Does 1 through 20, Inclusive, conspired for the purpose of carrying out administrative duties or investigatory functions that have the direct and proximate effect of depriving Ms. Nixon, Individually and as Successor in Interest of Mr. Moore, Deceased, of (a) equal protection of the law; and (b) equal protection and immunities under the law; and for the purpose of preventing and hindering the constituted authorities from giving and securing to Ms. Nixon, as Successor in Interest of Mr. Moore, Deceased, equal protection of the law.

124.    Ms. Lacey, Mr. Hum, and Does 1 through 20, did and caused to be done, acts in furtherance of the object of the conspiracy, whereby Ms. Nixon and Mr. Moore were deprived of the rights and privileges as set forth above.

125.    Specifically, Mr. Hum and his subordinates, under the supervision of Ms. Lacey, conspired with local law enforcement authorities to reject criminal reports made by Black gay men and presented to them by Black women.  Ms. Lacey's and Mr. Hum's active participation in this policy resulted in their failure to investigate these criminal reports, which contained several eye-witness accounts constituting probative evidence of the following felonious and misdemeanor criminal acts: (1) that Edward Buck regularly possesses and consumes illicit narcotics, including crystal methamphetamine; (2) that Edward Buck regularly solicits sex from Black men in exchange for temporary housing and/or monetary compensation; (3) that Edward Buck has in his possession and causes to be distributed videorecordings depicting Gemmel Moore masturbating while intoxicated; and (4) that Edward Buck regularly attempts to coerce

26

1  the Black men he solicits for sex to ingest or be forcibly injected with crystal

2  methamphetamine.

3       126.   Mr. Hum had access to several transcripts or notes taken from interviews

4  conducted by local law enforcement agents under his supervision, but these transcripts were

5  routinely rejected or ignored and thus never presented to Ms. Lacey.

6       127.   As a direct proximate result of the foregoing, Ms. Nixon, Individually and as

7  Successor in Interest of Mr. Moore, Deceased, suffered injuries, including but not limited to

8  severe and extreme emotional distress, mental anguish, psychological torture, and the

9  humiliation of having to literally beg the County to investigate Mr. Moore's death.  Ms. Nixon

10 further suffered the emotional pain of the prolonged mourning of her son's death after

11 repeatedly being confronted with the reality that the County did not care about the lives of her

12 son or other Black gay men whose reports of violent criminal activity the County ignored for

13 more than two (2) years.

14 **THIRTEENTH CAUSE OF ACTION: CIVIL RIGHTS VIOLATION (42 U.S.C. § 1986)**

15 **(Against Defendants JACKIE LACEY, as County of Los Angeles District Attorney,**

16 **CRAIG HUM, as County of Los Angeles Assistant Head Deputy District Attorney, and**

17 **DOES 1 through 20, Inclusive)**

18      128.   Ms. Nixon, Individually and as Successor in Interest of Mr. Moore, Deceased,

19 restates and incorporates by reference, as though fully set forth herein, the allegations contained

20 in each of the paragraphs above.

21      129.   Title 42 U.S.C. § 1986 provides:

22           Every person who, having knowledge that any of the wrongs
             conspired to be done, and mentioned in section 1985 of this title are
23           about to be committed, and having power to prevent or aid in
             preventing the commission of the same, neglects or refuses so to do,
24           if such wrongful act be committed, shall be liable to the party injured
             … for all damages caused by such wrongful act, which such person
25           by reasonable diligence could have prevented; and such damages
             may be recovered in an action on the case.
26

27      130.   Ms. Lacey and Mr. Hum, acting under color of law and in concert with one

28 another, and by way of a conspiracy among them and local law enforcement authorities, have

1 carried out acts in such a way as to have caused Plaintiffs to be denied equal protection of the
2 laws and to be deprived of equal privileges and immunities under the laws, on account of
3 Plaintiffs' race, by rejecting criminal reports made by Black gay men and presented to them by
4 Black women, resulting in an official widespread pattern, policy, or custom of systematically
5 failing to investigate white people for their felonious criminal acts against Black gay male
6 victims and survivors.  This policy was in effect at all pertinent times mentioned herein,
7 including before and after Mr. Buck caused the death of Mr. Moore.

8        131.    Ms. Lacey and Mr. Hum had knowledge of the conspiracy to violate Plaintiffs'
9 civil rights pursuant to the County of Los Angeles's District Attorney's Office's policy of
10 ignoring or rejecting reports of crimes against Black victims and survivors such that the County
11 of Los Angeles routinely declined or failed to investigate white people for their felonious
12 criminal acts against Black victims and survivors.

13       132.    Ms. Lacey and Mr. Hum had knowledge of the civil rights violations committed,
14 and had power to prevent these wrongs, but neglected or refused to do so.

15       133.    As a direct proximate result of the foregoing, Ms. Nixon, Individually and as
16 Successor in Interest of Mr. Moore, Deceased, suffered injuries, including but not limited to
17 severe and extreme emotional distress, mental anguish, psychological torture, and the
18 humiliation of having to literally beg the County to investigate Mr. Moore's death.  Ms. Nixon
19 further suffered the emotional pain of the prolonged mourning of her son's death after
20 repeatedly being confronted with the reality that the County did not care about the lives of her
21 son or other Black gay men whose reports of violent criminal activity the County ignored for
22 more than two (2) years.

23                                **PRAYER FOR RELIEF**

24       **WHEREFORE,** Plaintiff pray for judgment and damages against the Defendants as
25 follows:

26       1.    General damages in an amount to be determined at trial;

27       2.    Past and future medical and related expenses in an amount to be determined at trial;

28       3.    Past and future lost earnings in an amount to be determined at trial;

28

4.  Impairment of earning capacity in an amount to be determined at trial;

5.  Punitive damages pursuant to applicable law (except as to County);

6.  Reasonable attorneys' fees pursuant to applicable law;

7.  Prejudgment and post-judgment interest, including but not limited to, California Civil Code § 3288; and

8.  Any other and further relief that the Court considers just and proper.

29

1

**JURY DEMAND**

2      Plaintiffs demand a trial by jury of all issues so triable pursuant to Rule 38 of the Federal

3  Rules of Civil Procedure.

4

5  DATED: September 24, 2019

6      _____

7      Hussain Turk, Esq.
       Attorney for Plaintiff LATISHA NIXON

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28