Nana Gyamfi, Esq. (SBN 171480)
7526 Crenshaw Boulevard
Los Angeles, CA 90043
Telephone: (323) 947-9772
Email: attorneygyamfi@gmail.com

Brian T. Dunn, Esq. (SBN 176502)
THE COCHRAN FIRM CALIFORNIA
4929 Wilshire Blvd., #1010
Los Angeles, CA 90010
Telephone (323) 435-8205
Facsimile (323) 282-5280
Email: bdunn@cochranfirm.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LATISHA NIXON ET AL.,<br><br>Plaintiffs.<br><br>v.<br><br>EDWARD BUCK, individually; the COUNTY OF LOS ANGELES, ET AL.,<br><br>Defendants. | CASE NO.: CV 19-04610-CJC(SHSx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DEFENDANT COUNTY OF LOS ANGELES'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT FOR DAMAGES**<br><br>DATE:   MARCH 30, 2020<br>TIME:   1:30 P.M.<br>ROOM:  7C |

## Memorandum Of Points And Authorities

**I.  PLAINTIFF HAS SUFFICIENTLY ALLEGED EQUAL PROTECTION VIOLATIONS ARISING OUT OF HIS MEMBERSHIP IN THE FINITE CLASS DEFINED AS "VICTIMS OF EDWARD BUCK"**

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying to "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV §1. The Equal Protection Clause essentially mandates that state and local governments treat alike all persons that are similarly situated. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). The Equal Protection Clause applies to enforcement of the law. *Navarro v. Block,* 72 F.3d 712, 715-717 (9th Cir. 1995) A class-based equal protection violation requires a plaintiff to allege intentional discrimination on the basis of the plaintif's membership in an identifiable class. *F1ores v. Morgan Hill Unified School District*, 324 F.3d 1130, 1134 (9th Cir. 2003); *see also Gallinger v. Becerra,* 898 F.3d 1012, 1017 (9th Cir. 2018)

**A.  Plaintiff's Decedent Had a Constitutional Right to Have Police Services Administered to Him in a Nondiscriminatory Manner**

The Ninth Circuit has repeatedly affirmed the existence of a constitutional right to have police services administered in a nondiscriminatory manner, and has accordingly held that this constitutional right is violated when municipal policies deny police services to disfavored persons in a discriminatory manner. *Estate of Macias v. Ihde,* 219 F.3d 1018, 1028 (9th Cir. 2000); *Navarro v. Block* 72 F.3d. 712, 715-717 (9th Cir. 1996)

/ / /

Case 2:19-cv-04610-CJC-SS   Document 57   Filed 03/10/20   Page 3 of 11   Page ID #:735

1  **B.   Plaintiff's Decedent Has Sufficiently Alleged Standing Based on His**
2  **Membership in the Identifiable Class of Individuals Who are Victims**
3  **of Edward Buck**

4  Under *Monell v. Dept. of Social Services,* 436 U.S. 658, 691 (1978),
5  municipalities may not be held liable under 42 U.S.C. § 1983 "unless action
6  pursuant to official municipal policy of some nature caused a constitutional tort."
7  The Supreme Court made clear that in addition to an official policy, a
8  municipality may be sued for "constitutional deprivations visited pursuant to
9  governmental 'custom' even though such custom has not received formal approval
10 through the [governmental] body's official decisionmaking channels." *Id.* at 690-
11 91; see also *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481-82 (1986). A
12 plaintiff may prove "the existence of a custom or informal policy with evidence of
13 repeated constitutional violations for which the errant municipal officials were not
14 discharged or reprimanded." *Gillette v. Delmore,* 979 F.2d 1342, 1348 (9th Cir.
15 1992) (1993). Once such a showing is made, a municipality may be liable for its
16 custom "irrespective of whether official policy-makers had actual knowledge of
17 the practice at issue." *Thompson,* 885 F.2d at 1444. A plaintiff may prevail on an
18 equal protection claim by showing "that a class that is similarly situated has been
19 treated disparately" *Arizona Dream Act Coalition vs. Brewer* 757 F.3d 1053, 1063
20 (9th Cir. 2014); *Christian Gospel Church, Inc. V. City and County of San*
21 *Francisco,* 896 F.2d 1221, 1225 (9th Cir. 1990)  For the purposes of establishing
22 the causation requirement, in order to have Article III standing, a plaintiff need
23 only show a "fairly traceable connection between the alleged injury and the
24 alleged conduct of the defendant. *Sprint Communications Co. v. APCC Services,*
25 554 U.S. 269, 273 (2008)

26  To state a class-based equal protection claim, a plaintiff must allege: (1)
27 membership in an identifiable class; and (2) the existence of a similarly-situated
28 class against which the plaintiff's class can be compared. *Freeman v. City of*

3

*Santa Ana,* 68 F.3d 1180, 1187 (9th Cir. 1995). If the classification involves a protected class, such as race or gender, or if the classification implicates a fundamental right, the court applies a heightened level of scrutiny in order to determine whether the government's conduct is constitutional. *See Gallinger,* 898 F.3d at 1017; *Freeman,* 68 F.3d at 1187. If the classification is not inherently invidious, (such as race or gender) or does not implicate a fundamental right, the court applies a rational basis review. *Navarro,* 72 F.3d at 717. Under rational basis review, the government classification must be rationally related to legitimate government objectives. *Id.; Schweiker v. Wilson,* 450 U.S. 221, 230 (1981).

## C. A Plaintiff Has Standing to Assert a Class-Based Equal Protection Claim Based on His Membership in an Identifiable Class of Crime Victims Subjected to the Discriminatory Denial of Police Services Perpetrated by a Common Abuser

A plaintiff need not allege membership in a suspect class to state a class-based equal protection claim. The plaintiff need only allege membership in an identifiable class. *Flores v. Morgan Hill Unified School District,* 324 F.3d 1130, 1134 (9th Cir. 2003)  The viability of an equal protection claim arising out of an identifiable class of crime victims was recently resolved in the plaintiff's favor in *Garcia v. City of Honolulu,* 2019 U.S. Dist. LEXIS 75069, in which the district court held that the plaintiff adequately alleged membership in an identifiable class, which was defined as "victims of domestic abuse whose abusers are Honolulu Police Department officers".  In successive rulings, the Court rejected defendants' arguments that the plaintiff's claims should be dismissed because she had not alleged membership in a suspect class. *Id.,* at *23-24. In *Garcia,* the plaintiff's equal protection claim alleged and identifiable class that plaintiff belonged to, defined as "victims of domestic abuse whose victims are Honolulu Police Department Officers". This was sufficient because, notwithstanding  the absence

of a suspect-or quasi-suspect class, the parameters of the class could be clearly identified. *Id.* As for the similarly-situated class, the Court, relying on *Freeman, supra.*, recognized that in addition to alleging her membership in an identifiable class, she also had to allege that a similarly-situated class was treated differently to satisfy the pleading requirements attendant to an equal protection violation. *Id.* The plaintiff identified as the similarly-situated class against which her class could be compared as, "domestic abuse victims whose abusers are not HPD officers." *Id.,* at 24. In deeming sufficient the plaintiff's identification of (1) the identifiable class and (2) the similarly-situated class against which the plaintiff's class could be compared, the Court reasoned as follows:

> Accepting these factual allegations as true, the Court finds that they give rise to a plausible inference that a similarly-situated class of victims exists for the purposes of Plaintiff Garcia's equal protection claim. The distinguishing factor between theses classes of victims is the identity of the abusers. For one class the abusers are HPD officers, and for the other class, the abusers are ordinary citizens. . . Moreover, the purpose of identifying a similarly-situated group is so the court can have a "control group" and determine whether "unequal treatment of people in similar circumstances" has taken place. See *Freeman,* 68 F.3d at 1187 (internal citations omitted)(citing *Attorney General v. Irish People, Inc.,* 684 F.2d 929, 946, (D.C. Cir. 1982); *United States v. Aguilar,* 883 F.2d 662, 706 (9th Cir. 1989)) The Court finds that the incidents involving the similarly-situated class adequately illustrate the disparate treatment that Plaintiff Garcia complains about. Accordingly, Defendants' argument is without merit. (footnote omitted)

In the referenced footnote, the Court recognized the , *Martinez v. Pennington,* 2016 U.S. Dist. LEXIS 105127, a case in which the plaintiff pursued equal protection claims against two municipalities and several individual police

officers, alleging that the municipalities and officers violated her right to equal protection by enforcing domestic violence laws differently than other types of laws. *Id.,* at *6.  *See also Davis v. Prison Health Services,* 679 F.3d 433, 441 (6th Cir. 2012)(explaining that when the identifiable group has been recognized as a suspect or quasi-suspect class, courts examine the classification under heightened scrutiny, whereas when the identifiable group has not been recognized as a suspect or quasi-suspect class, courts examine the classification under rational basis review).

**D.     Plaintiff Need Not Allege That Defendants' Policy of Denying Police Services to Victims of Edward Buck in a Discriminatory Manner Was the Moving Force Behind Her Son's Death to Adequately Allege Causation**

In a case involving allegations of a municipal policy of discrimination against victims of domestic violence in the administration of police services, the Ninth Circuit addressed the issue of the threshold pleading requirements needed to allege causation in an equal protection claim brought on behalf of the plaintiffs' decedent. In *Estate of Macias v. Ihde,* 219 F.3d 1018, 1026-1027 (9th Cir. 2000) the Court evaluated a case involving the relatives of one Maria Macias, an alleged domestic violence victim who was fatally shot by her husband. *Id.*  In that case, Mrs. Macias's relatives initiated a *Monell* claim under § 1983 alleging constitutional injuries suffered by Mr. Macias as a result of the defendant County's policy to discriminate against female victims of domestic violence. *Id.,* at 1020. In addressing the threshold pleading requirements of the equal protection claim brought by Mrs. Macias's relatives, the Ninth Circuit determined that the lower court erred in concluding as a matter of law that the alleged constitutional deprivation was the murder of Mrs. Macias. *Id.,* at 1028. In so holding, the Court

1  reasoned that the plaintiffs were not required to prove that the challenged
2  municipal policy caused the death of Mrs. Macias, reasoning as follows:
3      We agree with the Appellants that the district court erred as a matter of law
4      in concluding that the alleged constitutional deprivation was the murder of
5      Mrs. Macias. It is well established that "there is no constitutional right to be
6      protected by the state against being murdered by criminals or madmen."
7      *Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir. 1982). There is a
8      constitutional right, however, to have police services administered in a
9      nondiscriminatory manner - a right that is violated when a state actor denies
10     such protection to disfavored persons. *See Navarro v. Block*, 72 F.3d 712,
11     715-17 (9th Cir. 1996) (recognizing a cause of action under § 1983 based
12     upon the discriminatory denial of police services); *Balistreri v. Pacifica*
13     *Police Dep't,* 901 F.2d 696, 700-01 (9th Cir. 1990) (same); see also *Penrod*
14     *v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (stating that "an equal
15     protection violation occurs when the government treats someone differently
16     [from] another who is similarly situated") (citing *Cleburne v. Cleburne*
17     *Living Ctr., Inc.,* 473 U.S. 432, 439, 87 L. Ed. 2d 313, 105 S. Ct. 3249
18     (1985)). The alleged constitutional deprivation in this matter was the
19     alleged denial of equal police protection to Mrs. Macias. While the question
20     considered by the district court may have some relevance to the amount of
21     damages that the Appellants are entitled to recover, it has no effect on the
22     issue whether they can demonstrate that the Appellees' conduct could
23     support a cause of action under § 1983. A plaintiff may prove a violation of
24     § 1983 without demonstrating that the deprivation of his or her
25     constitutional rights caused any actual harm. *See George v. City of Long*
26     *Beach,* 973 F.2d 706, 708 (9th Cir. 1992). " In this Circuit, nominal
27     damages must be awarded if a plaintiff proves a violation of his [or her]
28     constitutional rights." *Id.* The trier of fact must award nominal damages to

the plaintiff "as a symbolic vindication of her constitutional right." *Floyd v. Laws,* 929 F.2d 1390, 1403 (9th Cir. 1991). Thus, the Appellants may prevail on their claim and receive at least nominal damages if they can prove that the Appellees violated Mrs. Macias's right to equal protection, irrespective of whether the Appellees' conduct caused Mrs. Macias's death. *Macias,* 219 F.3d, at 1028.

A similar analysis begs the denial of defendants' challenge to causation in this instance. Here Plaintiff alleges that, for a time period extending as far back as two years prior to his death, that Ed Buck had a distinct modus operendi of targeting black gay men for particularized acts of sexual violence and drug poisoning. (FAC, ¶¶105-106) Additionally, plaintiff has clearly alleged that, for period of years prior to the plaintiff's death, that the County was made aware of Mr. Buck's conduct through the reporting of a significant number (30 to 50) of specific acts reported to the deputies, agents and employees of the West Hollywood Station of the LASD in the two year period preceding Mr. Moore's death. (FAC ¶¶ 108) The FAC concludes by asserting that as a result of defendant's policy of discrimination in the distribution of police services, Plaintiff's decedent[1] "suffered violations of his civil rights and associated constitutional deprivations occasioned by his being denied police services in a non-discrimnatory manner, including, at a minimum, nominal monetary damages prior to his death" (FAC ¶139)

Hence, defendant's repeated assertions that Plaintff must demonstrate that the challenged municipal police caused her son's death is misplaced, as she need not allege that defendants' policy of denying police services to victims of Edward

---

[1] The typographical error referencing "Mr. Buck" clearly can only reference Gemmel Moore, as the decedent described in paragraph 139 of the FAC.

Buck in a discriminatory manner was the moving force behind her son's death to adequately allege causation.

## II. PLANTIFF'S FOURTH AMENDED COMPLAINT IS NOT TIME-BARRED

An amendment to a complaint "relates back" to the date the complaint was originally filed if the "law that provides the applicable statute of limitations allows relation back" or "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1). California courts have construed the Act to allow relation back when amending a complaint against a public entity if the newly asserted claims address the "same conduct" as the original *See, e.g., Carlino v. L.A. Cty. Flood Control Dist.,* 10 Cal.App.4th 1526, 1536, 13 Cal. Rptr. 2d 437 (1992) (allowing amendment substituting a party where plaintiff had "substantially complied with the claims presentation requirements" against public entity); *Bendix Corp. v. City of L.A.*, 150 Cal.App.3d 921, 926, 198 Cal. Rptr. 370 (1984) (allowing additional claims against a public entity where the new claims "addressed the same conduct" as the original pleading). A new claim arises out of the "conduct, transaction, or occurrence set out . . . in the original pleading" if it "will likely be proved by the 'same kind of evidence' offered in support of the original pleading." *ASARCO, LLC v. Union Pacific R. Co.,* 765 F.3d 999, 1004 (9th Cir. 2014).

Here, the conduct alleged in the FAC is not so attenuated from the original pleading as to warrant the disallowance of the relation back doctrine in this instance. The original pleading in this case focused on allegations against agents of the District Attorney's Office, focusing on a policy of discrimination in the prosecution of claims in favor of affording preferential treatment to white men like Edward Buck (See Dkt., 1-1, at ¶¶94-95)("County knowingly maintains and

permits official *sub-rosa* policies or customs of permitting the occurrence of the kinds of wrongs . . . by failing and reusing to impartially prosecute white men, like Mr. Buck, who commit felonious crimes of narcotics possession and physical violence against Black men, including Mr. Moore.") The fact that the FAC presently references discrimination in the distribution of police services to afford preferential treatment to Mr. Buck, as opposed to the discriminatory prosecution of laws committed by Mr. Buck does not so alter the character of the constitutional claims alleged as to fundamentally alter the evidence involved in this case. Both incarnations of the operative pleading involve the failure to prosecute white men, like Mr. Buck, who commit felonious crimes of narcotics possession and physical violence against Black men, like Gemmel Moore. (Dkt. 1-1, at 95) It follows that the evidence necessary to support the allegations of both the FAC and the original pleading would necessarily involve discovery related to the crimes of Ed Buck, the past victims of Ed Buck, and the County's selective distribution of its resources in favor of insulating Ed Buck from criminal liability.

Hence, the instant pleading should be deemed to relate back to the original pleading, sufficient to toll the applicable limitations period.

### III. CONCLUSION

For all the foregoing reasons, defendant's Motion to Dismiss should be denied.

DATED: March 9, 2020         /s/ Brian T. Dunn
                             Brian Dunn, Esq.
                             THE COCHRAN FIRM CALIFORNIA
                             Attorneys for Plaintiff